612 So.2d 1 (1993)
STATE of Louisiana
v.
Thomas ABADIE.
No. 92-KK-0797.
Supreme Court of Louisiana.
January 19, 1993.
Rehearing Denied February 18, 1993.
*2 Ginger Berrigan, Alexandria, for applicant.
Richard P. Ieyoub, Atty. Gen., John M. Mamoulides, Dist. Atty., Dorothy Ann Pendergast, Asst. Dist. Atty., Barron C. Burmaster, Asst. Dist. Atty., Andrea Price Janzen, Asst. Dist. Atty., James D. Maxwell, Asst. Dist. Atty., Leigh Anne Wall, Asst. Dist. Atty., for respondent.
Arthur A. Lemann, III, Martha L. Adams, New Orleans, for Louisiana Ass'n of Crim. Defense Lawyers (Amicus Curiae).
DENNIS, Justice.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), the Court held that when an accused has asked for counsel he is not subject to further custodial interrogation by the authorities without counsel present, whether or not the accused has consulted with an attorney, unless the accused himself initiates further communication, exchanges, or conversations with the police. The issues in the present case are whether defendant requested counsel and, if so, whether he subsequently initiated further interrogation by the authorities, prior to confessing to a murder. The trial court denied the defendant's motion to suppress the confession. The court of appeal denied writs. We reverse. The defendant clearly requested counsel and the police halted interrogation. However, the officer in charge reinitiated interrogation by having the defendant returned to the police station and subjected to requests for polygraph examination. Therefore, defendant's subsequent request to talk to an acquaintance among the police force before submitting to the polygraph did not constitute an initiation of interrogation.
The defendant relies almost exclusively on well-settled, clearly applicable federal constitutional principles in his oral and written arguments. Because he is clearly entitled to relief on these grounds, we do not discuss the state constitutional questions and other federal issues that might have been raised.
On November 15, 1990, the body of seven-year-old homicide victim, Raquel Fabre, was found near the Tanglewood Apartments in Westwego. The defendant, Thomas Abadie, took part in the search and was among those who found the body. The next day, November 16, 1990, four officers brought him to the police station for questioning. Abadie was kept in a locked holding room, and samples of his hair, blood and saliva were taken. One officer thought Abadie resembled the composite of a suspect in an unrelated attempted rape case and initiated plans to put his picture in a photographic line up. Abadie was advised of his Miranda rights and questioned for approximately fifteen minutes *3 about the murder. But when Westwego police officer Bruce Chauvet began to question him about the unrelated attempted rape, Abadie became agitated, claimed he was being given a "bum rap" and refused to answer any more questions until he spoke to "his friend, Cal Hotard," a local attorney and judge-elect. Chauvet, who knew that Hotard was an attorney, suspended the interrogation and informed the other officers that Abadie had asked to speak to Hotard. In response to Abadie's request to leave the police station, he was placed in a police car and driven toward his residence.
Within minutes, however, Chief of Criminal Investigations, Richard Rodrigue, recalled the police car to the station house by radio. Rodrigue asked Abadie to agree to further questioning under polygraph although Rodrigue knew that Abadie had requested counsel. Abadie again asked to speak to a lawyer. Rodrigue asked which lawyer, and Abadie again named Calvin Hotard. Rodrigue phoned Hotard, told him of the investigation and that Abadie had asked to confer with him. Hotard spoke to Abadie but told him that he could not give advice or act as attorney in the matter because he recently had been elected judge. Hotard repeated the substance of these remarks to Rodrigue before hanging up. While Hotard talked to Rodrigue, Abadie called his brother on another phone in an adjoining room. During this conversation Abadie said that he would like to talk to Sergeant Maggie Pernia, a police officer that he knew. When Rodrigue finished talking to Hotard, he immediately renewed his efforts to persuade Abadie to submit to questioning under polygraph. Abadie refused and asked to talk to Sergeant Pernia.
Rodrigue sent for Pernia but continued his efforts to persuade Abadie to answer further questions about the homicide under polygraph. When Sergeant Pernia arrived at the police station she also importuned Abadie to submit to a lie detector test. He resisted but ultimately complied when his brother urged him to by telephone. During the polygraph examination Abadie gave a description of innocent involvement in discovering the homicide victim's body. After the polygraph, Sergeant Pernia continued to interrogate Abadie and took a formal statement summarizing his exculpatory story. Shortly thereafter, Pernia and other officers informed Abadie that he had failed the polygraph regarding the murder. Moreover, they told Abadie that he had been positively identified as the culprit in the unrelated attempted rape case. Abadie was reduced to tears by this information and submitted to a second polygraph in an attempt to clear himself of the murder. However, he failed the test again. Later that evening Abadie was arrested on the attempted rape charge. After this he was confined to jail except during custodial interrogation sessions.
From 11:30 p.m. to 1:30 a.m. on November 16-17, 1990, Captain August Claverie questioned Abadie. He confronted Abadie with his failure to pass the polygraph and inquired as to the reason. In response, Abadie claimed that he had seen John Heath grasp the victim and force her into the woods. However, when he was told later that Heath had been "cleared" by polygraph and further investigation, Abadie admitted that he had lied.
On November 17, 1990, Saturday, Claverie interrogated Abadie from about 3:15 p.m. until 9:15 p.m. During this time Abadie was allowed to make approximately ten telephone calls to various people.
On November 18, 1990, Sunday, Claverie interrogated Abadie off and on over a period of several hours. Abadie was allowed to speak to his brother for about twenty minutes. At 7:30 p.m. Abadie agreed to make "a real good statement ... on everything from the beginning to right [then]." Claverie then recorded a lengthy statement, which again implicated Heath. Between interrogations Abadie was permitted to make some phone calls, which he used to talk to relatives and friends apparently in unsuccessful attempts to obtain a lawyer. At approximately 1:15 a.m., Abadie indicated that he wanted to be left alone for a couple of days "to think about this." Abadie was returned to the jail at about 1:35 a.m.
*4 On November 19, 1990, Monday, Abadie was taken to magistrate court for appointment of counsel on the attempted rape charge. The screening attorney advised him of his rights pertaining to the rape charge through a cell door portal for two minutes. The attorney said Abadie was unresponsive, withdrawn, and of blank expression. The lawyer was unaware of the murder charge and did not advise him in this regard.
On November 20, 1992, Tuesday, at about 6:45 p.m., Captain Claverie had Abadie brought to him from the jail for further questioning. Because Abadie had been to court, Claverie asked if he had a lawyer. Abadie told him he did not but that he was going to get one. Claverie confronted Abadie with his tennis shoes and a picture of the murder victim showing a shoe imprint on her face. He asked Abadie if the impression on the child's face matched the design on his shoe bottoms. Claverie continued his interrogation of Abadie, who by this time was crying and complaining that he was miserable. After being allowed to talk to his girlfriend by phone, Abadie gave an unrecorded oral statement implicating himself in the murder. Following the unrecorded statement which ended about 8:40 p.m., Abadie began to repeat the substance of his confession in a tape recorded statement.
Shortly after 9:00 p.m. a lawyer acting at the request of Abadie's girlfriend's mother called the stationhouse and asked to speak to Abadie. Chief Rodrigue relayed Abadie's response to the lawyer that he would talk to him the next day. The lawyer rushed to the station with his law partner. The recording of Abadie's statement was interrupted with their arrival at 9:26 p.m. According to the attorneys, Abadie was emotionally distraught, irrational, incoherent, hyperagitated, and disassociated from reality. Finally, however, with their assistance he was able to request the police to terminate the interrogation. Abadie was returned to the jail and no further statements were taken from him.
Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612-13, 16 L.Ed.2d 694 (1966), itself indicated that if a suspect indicates "in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." The Court's later cases did not abandon that view. In Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) the Court noted that Miranda had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present if the individual stated that he wanted counsel. 423 U.S. at 104, n. 10, 96 S.Ct. at 326, n. 10; see also id. at 109-111, 96 S.Ct. at 329-330 (White, J., concurring). In Fare v. Michael C., 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1977), the court referred to Miranda's "rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease." Rhode Island v. Innis, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), a case in which a suspect in custody had invoked his Miranda right to counsel, again referred to the "undisputed right" under Miranda to remain silent and to be free of interrogation "until he had consulted with a lawyer."
Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) reconfirmed these views and, to lend them substance, held that, when an accused prior to or during interrogation asks for counsel, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated, custodial interrogation even if he has been advised of his rights; and that such an accused is not subject to further interrogation by the authorities until counsel is present, unless the accused himself initiates further communication, exchanges, or conversations with the police. Recently, in Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), the Court confirmed that the Edwards rule bars police-initiated interrogation unless the accused has counsel with him at the time of questioning. "Whatever the ambiguities of our earlier cases on this point, we now hold that when *5 counsel is requested, interrogation must cease; and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." Id. 111 S.Ct. at 491. The Edwards rule, moreover, is not offense-specific: once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present. McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991), citing Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).
Therefore, once a suspect asserts his Miranda right to counsel, not only must the current interrogation cease, but he may not be approached in connection with any further criminal investigation until his counsel is present. McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991). And if the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards. Id.
The present case raises three interrelated issues: (1) whether the accused asked for counsel; (2) whether the police reapproached the accused in connection with the criminal investigation without his counsel being present; and (3) whether the accused initiated further communication with the police before they initiated an encounter with him in the absence of counsel.

1.
Miranda emphatically declared that if "the individual indicates in any manner at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease" and that if he "states that he wants an attorney, the interrogation must cease until an attorney is present." Miranda, supra 384 U.S. at 473-74, 86 S.Ct. at 1627-28. The request need not be formal or direct, or for a particular attorney, but is sufficiently conveyed by even an unsuccessful attempt to reach a lawyer, United States v. DeLeon, 412 F.Supp. 89 (D.V.I.1976), State v. Slobodian, 57 N.J. 18, 268 A.2d 849 (1970), United States v. Porter, 764 F.2d 1 (1st Cir.1985), Hendrickson v. State, 285 Ark. 462, 688 S.W.2d 295 (1985), or an inquiry whether the police could recommend a lawyer. 1 LaFave & Israel, Criminal Procedure § 6.9 p. 532 (1984). Indeed, courts must give a broad rather than a narrow interpretation to a suspect's request for counsel. Michigan v. Jackson, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986).
Applying these precepts, we conclude that Abadie made direct, clear and unequivocal requests for counsel of both Chauvet and Rodrigue when each of the officers first accosted him. Furthermore, Abadie reaffirmed his request for counsel indirectly by unsuccessfully seeking legal advice and assistance by phone from Calvin Hotard, the attorney and judge-elect. All of these Miranda right to counsel requests occurred before Rodrigue reapproached Abadie and asked him to answer questions about the investigation under polygraph. There was no break in custody. Counsel was not present. As a matter of fact, Abadie apparently made several other unsuccessful attempts to obtain the assistance of counsel before he finally confessed on the fifth day of the interrogation.

2.
When a defendant invokes his Miranda right to counsel, the admissibility of his subsequent confessions under federal law is to be determined by a two-step analysis: it first must be asked whether defendant "initiated" further conversation, and if the answer is yes it then must be inquired whether defendant waived his right to counsel and to silence, "that is, whether the purported waiver was knowing and intelligent * * * under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." Oregon v. Bradshaw, 462 U.S. 1039, 1044-46, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983); See LaFave & Israel, § 6.9, at 538. We do not reach the second prong of the analysis in the present case, however, because the police *6 "reapproached" Abadie for further interrogation before he could have "initiated" further communications with the police.
The term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). This is an objective test which does not require a determination of the actual perception of the suspect but prohibits police speech or conduct that creates a situation in which the suspect probably will experience the functional equivalent of direct questioning by concluding that the police are trying to get him to make an incriminating response. LaFave & Israel, Criminal Procedure § 6.7, p. 501-02. (1984 & supp. 1991); White, Interrogation Without Questions: Rhode Island v. Innis and United States v. Henry, 78 Mich.L.Rev. 1209, 1231-32 (1980).
Consequently, Chief Rodrigue's attempts to get Abadie to submit to questioning about the murder as part of a polygraph examination was an investigatory "reapproach" or a "reinitiation" of interrogation, because the officer should have realized that this conduct would probably be viewed by the suspect as designed to get him to make an incriminating response, and because it was in fact, as Chief Rodrigue admitted, an attempt to question Abadie about the offense as part of a lie detector test.

3.
Because the police-reinitiated interrogation or investigatory approach was in progress before Abadie responded to its pressure by expressing a possible willingness to talk to Sergeant Pernia about the case, Abadie did not "initiate" or "reopen" interrogation. As a matter of law, the presumption raised by Abadie's requests for counselthat he considered himself unable to deal with the pressures of custodial interrogation without legal assistancedid not disappear simply because the police approached him, still in custody, still without counsel, with a slightly modified form of the same criminal investigation. See Arizona v. Roberson, supra 486 U.S. at 683, 108 S.Ct. at 2099. In the interrogation context "initiation" means to "begin" or "set-going." In order for there to be a valid waiver, the suspect must have "started," not simply "continued," the interrogation; for, just as one cannot start an engine that is already running, a suspect cannot "initiate" an on-going interrogation. Christopher v. Florida, 824 F.2d 836, 845 (11th Cir.1987); Smith v. Wainwright, 777 F.2d 609, 618 (11th Cir.1985). It was only after Chief Rodrigue reapproached the defendant and reinitiated the communication and investigation, in the absence of counsel and without a break in custody, that defendant asked to talk to Sergeant Pernia. Therefore, defendant did not "initiate[] further communication, exchanges, or conversation with the police." Edwards v. Arizona, 451 U.S. at 484, 101 S.Ct. at 1884. Indeed, Edwards would be rendered meaningless if government agents were permitted to continue or reinitiate interrogation after the request for counsel and then claim that the consequent response by the accused represented initiation which permitted a waiver of the asserted counsel right. United States v. Gomez, 927 F.2d 1530, 1539 (11th Cir.1991).
In summary, we conclude that Abadie asked for counsel when the interrogation first began, the officers stopped but reinitiated the custodial interrogation without counsel present, and Abadie's subsequent request to talk to Sergeant Pernia could not start the police-reinitiated interrogation that was already in progress. Therefore, Abadie's statements made during that uncounseled interrogation did not amount to a valid waiver and hence should have been suppressed as being inadmissible evidence. The judgment of the trial court is reversed and the case is remanded.
REVERSED AND REMANDED.
MARCUS, J., dissents and assigns reasons.
COLE, J., respectfully dissents because of disagreement with factual analysis of the majority.
*7 MARCUS, Justice, dissenting.
I agree with the majority's finding that defendant invoked his right to counsel. However, I disagree with majority's conclusion that the request by Chief Rodrigue that defendant take a polygraph test was a "further interrogation" after he invoked his right to counsel. Chief Rodrigue testified that he did not question defendant at this time, but merely asked him to take the polygraph test and gave him some reasons why he should take it. Defendant responded in the negative to the request to take the polygraph test. Later, after voluntarily asking to talk with Sergeant Pernia, defendant agreed to take the polygraph test and subsequently gave a confession. Under these circumstances, I believe defendant was never re-interrogated by police after he requested counsel, and his decision to re-initiate contact with police should be considered voluntarily. Accordingly, I respectfully dissent and would affirm the decision of the trial court denying the motion to suppress.