jiPLOTKIN, Judge.
The defendant/appellant, Reggie Issac, was charged by bill of information with possession with intent to distribute cocaine in violation of R.S. 40:967. The defendant entered a plea of not guilty. Defense counsel filed motions for discovery and to suppress the evidence, identification and confession. The state filed its discovery motions and notice of intent to use confession. At the motion hearing, the trial court denied the motion to suppress the confession and took motion to suppress the evidence under advisement. The state noted that motion to suppress the identification was not applicable in the case. The trial court denied the defendant’s motion to suppress the evidence. After several continuances, trial was set for May 6, 1987. When defendant did not appear for trial on May 6, 1987, the trial court issued an alias capias. Defendant was arrested on the alias capias in January of 1993.
On June 3, 1993, a determination of counsel hearing was held. Ms. Shelley Vix of the Orleans Indigent Defender Program was appointed to represent the defendant. On August 31, 1993, the defendant withdrew his plea of not guilty and entered a plea of guilty reserving his rights under State v. Crosby, 338 So.2d 584 (La.1976) to appeal the trial court’s denial of his motion to suppress the evidence. Defendant waived delays and was sentenced to ten years at hard labor with credit for time served. Defendant’s oral motion |2for appeal was granted. The record lodged on appeal included a notice that the transcript of the trial court’s ruling denying the motion to suppress was not available. *338 The record contains the transcript of the testimony taken at the motion hearing.
On June 18, 1986, the defendant was arrested for possession with intent to distribute cocaine after a search of his apartment revealed a large quantity of cocaine, over $3000.00 in currency, a Beretta .25 ACP pistol and an Ohaus balance scale. The arrest occurred subsequent to the execution of the search warrant of defendant’s home obtained by Detective Clarence Wethern.
At the suppression hearing, Detective Wethern testified that he obtained the search warrant after receiving information from a confidential informant and corroborated that information through his own surveillance of the defendant’s activities. The application for search warrant indicates that the police officer had received information from a confidential informant that defendant and Tommie Pickett were involved in the trafficking of heroin and cocaine. According to the informant, Pickett would supply defendant and others with bulk quantities of drugs and defendant would wholesale smaller quantities to street level dealers. Based on information received from the confidential informants and other police officers, and surveillance of the defendant’s and Pickett’s activities, Detective Wethern prepared and presented the application for search warrant and supporting affidavit to the magistrate. Detective Weth-ern testified on cross-examination that he did not orally provide the magistrate with any additional information to support the application. Detective Lloyd Clark testified at the suppression hearing that he did not prepare the application for search warrant nor was he present when the application was given to the magistrate for review. The state submitted the matter on the application for search warrant and the supporting documentation, and the testimony of the two police officers.
A review of the record for errors patent reveals none.
In his sole assignment of error, the defendant contends that the trial court erred when it denied his motion to suppress the evidence seized from his apartment.
C.Cr.P. article 162 provides that a search warrant may be issued “only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, ^reciting facts establishing the cause for the issuance of the warrant.” The Louisiana Supreme Court has held that probable cause exists when:
the facts and circumstances within the affi-ant’s knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
See also State v. Roebuck, 530 So.2d 1242, 1247 (La.App. 4th Cir.1988), writ den. 531 So.2d 764 (1988); State v. Scott, 499 So.2d 1248 (La.App. 4th Cir.1986). The facts which form the basis for probable cause to issue a search warrant must be contained “within the four corners” of the affidavit. Duncan, supra; Roebuck, supra. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482 (La.1984), cert. den., Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); State v. Hernandez, 513 So.2d 312, 316 (La.App. 4th Cir.1987), writ den., 516 So.2d 130 (1987).
In its review of a magistrate’s finding of probable cause, the reviewing court must determine whether the “totality of circumstances” set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a “substantial basis for ... concluding] that probable cause existed.” Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
See also Manso, supra; Roebuck, supra.
In the affidavit filed in support of the application for search warrant, Detective Wethern stated that:
*339 During a four month period, beginning in February 1986, Narcotics Officers Clarence Wethern and Wayne Farve have received information from two distinct confidential sources (one untested and one of demonstrated reliability through past arrests effected based on his/her contributions) regarding the trafficking in Heroin and Cocaine conducted by Reggie Isaac (N/M 8-21-43) and Tommie Pickett (N/M 10-5-51). According to the sources, the pair were responsible for the supply of these drugs to retailers in the Calliope Housing project as well as to dealers in the New Orleans East area. Isaac was described as udriving a beige or gold Dodge “Rampage” truck and a red BMW. According to the sources, the BMW belonged to Isaac’s paramour Karen Broadnax. Pickett utilized a gray BMW. The pair enjoyed a relationship in which Pickett would supply Isaac and others with large quantities of bulk drugs, and Isaac would wholesale smallers (sic) quantities to street level dealers. Officer Robert McNeil also received information corresponding to that received from an anonymous telephone tipster. According to all of the sources, Isaac and Pickett resided in the same apartment complex in the New Orleans East area.
The Officers were familiar with Pickett as a convicted Heroin trafficker who has accrued nine prior narcotics arrests. Pickett had also been the target of a previous narcotics investigation centered on his alleged cocaine trafficking from within his residence at 10692 Hayne Boulevard Apartment D. The Officers knew Isaac as a suspected drug trafficker and a convicted felon.
In response to the information generated during that time, the Officers conducted surveillances of both subjects. Isaac was observed driving both the Dodge pickup and the red BMW. The truck was registered to Isaac at 10698 Hayne Boulevard # B (License # T937812). The BMW was registered to Karen Boyd (License # 867B691). Surveillances of this location located both vehicles. In addition, the Officers observed the gray BMW (no license plate) parked at 10692 Hayne Boulevard. Pickett was observed driving this car on several occasions.
On February 26, 1986, the Officers had ocassion (sic) to arrest Isaac for violation of the statute regarding convicted felons possessing firearms and for possession of Marijuana. At the time of that arrest, he was in the company of convicted drug trafficker Fay Richmond (N/F 8-23-61).
On March 8, 1986, the Officers arrested Tommie Pickett for possession of a firearm by a convicted felon. Pickett was arrested after he left his residence at 10692 Hayne Boulevard in the gray BMW.
On March 18,1986, the Officers arrested Isaac in the company of Bobby Packnett (a suspected narcotics trafficker with a prior Talwin arrest) for possession of cocaine. This arrest occurred after the Officers observed Isaac go to his Hayne Boulevard apartment and later meet with Pickett in front of that residence.
On June 11, 1986, Officers Favre and Wethern spoke with an untested source who stated that Isaac and Pickett were currently engaged in the sales of cocaine from their apartments at 10698 and 10692 Hayne Boulevard. According to that source, who stated that he/she had observed the sales, Pickett enjoyed a brisk trade from subjects who would go to his apartment (# D at 10692 Hayne Blvd.). Isaac had little traffic to his residence but that he appeared to make deliveries. The source stated that Pickett’s trade included repeat customers who would return several times during the night. In particular, the informant described a negro male in a van and a negro female who drove a Camaro.
On Tuesday July 17, 1986, Officers Wethern and Farve spoke with Narcotics Officer Lloyd Clark. Officer Clark stated that on Sunday June 15, 1986, he spoke with an untested confidential source who stated that he/she observed narcotics 15sales at apartment D of 10692 Hayne Blvd. and that the sales were conducted by a black male who drove a gray BMW. After observing this activity, he/she contacted Officer Clark and asked that something be done about the activity.
*340 In response to the plethora of information gained over the past months and in particular to the complaint fielded by Officer Clark, the officers initiated a surveillance of the apartments at 10692 and 10698 Hayne Blvd. The complex consists, of a series of fourplexes in line along Hayne Boulevard. Pickett’s apartment (10692 Hayne Blvd. # D) faces Isaac’s apartment (10698 Hayne Blvd. # B). This watch was activated at about 9:00 PM on Tuesday June 17, 1986.
Officer Wethern took a position of concealment on the levee directly across Hayne Blvd. from the complex and Officer Farve assumed a covert position on Hayne Blvd. affording a view of the parking area and the access to the complex.
As the Officers arrived, they noticed that the beige Dodge truck and the red BMW were parked in the space assigned to apartment B (Isaac’s apartment) but Pickett’s gray BMW gone. In the space assigned to Pickett’s apartment was a gray Mazda RX7. The Officers observed a negro male, clad in a multi-colored tropical print shirt walking away from the area of Pickett’s residence. The subject entered the Mazda and drove in an easterly direction on Hayne Blvd. The Officers followed the subject to a Time Saver store at Bullard and Hayne. The subject made a call from the pay telephone in the parking-lot of that store. He then returned to 10692 Hayne Blvd. The Officers observed that the gray BMW was now parked in front of the apartment. The subject in the Mazda went directly to apartment D (located in the south east corner of the four-plex) and was met at the door by Tommie Pickett. The subject was allowed entry and the time was noted at about 9:15 PM. Within a few minutes, Pickett and the subject exited the apartment. The subject entered the Mazda and conversed with Pickett for a few seconds and then drove away. Pickett returned to the apartment. At about 9:23 PM, a van (License #T097496) parked on the corner of La-combe St. and Hayne Blvd. The passenger exited the van and went directly to apartment “D”. The subject knocked and was allowed entry. At about 9:25 PM, the subject exited the apartment and returned to the van. The van drove away in a river direction on Lacombe.
As that subject exited the apartment, he was accompanied by Pickett. Isaac stepped out of his apartment at the same time (apartment B 10698 Hayne Blvd.) Isaac and Pickett spoke briefly and Pickett returned to his apartment. Isaac remained in the parking lot of the complex.
At about 9:35 PM, Pickett left his apartment entered his gray BMW and drove away in an easterly direction on Hayne Blvd. The Officers attempted to conduct a moving surveillance of the BMW but were frustrated by Pickett’s evasive driving techniques.
At about 9:37 PM, the Officers observed Isaac exit the apartment and enter his Dodge truck. Isaac also drove away in an easterly direction on Hayne Blvd. Officer Farve followed Isaac and was assisted by Officers Lloyd Clark and Pedro Marina. Isaac drove to Bullard Rd. where he turned in a river direction. He continued on Bullard to Morrison Rd. where he turned to the west and proceeded to the McKenzie Bakery ^parking lot at Morrison and Read Rds. Isaac drove into the lot and stopped near a green Buick (which was occupied by two negro males). The passenger entered Isaac’s truck and the pair made an exchange. The subjects in the Buick were subsequently arrested for possession of Cocaine after the Officers followed them away from the meeting place.
At about 9:50 PM, Officer Wethern observed Pickett return to the apartment. Isaac returned to his apartment at about 10:00 PM.
At about 10:35 PM, the Officers observed the van (described in paragraph two of thsi (sic) page) return to Lacombe and Hayne. The passenger, the same negro male clad in a football jersey bearing the number 32, went directly to apartment “D”, knocked and was allowed entry. He exited the apartment after a few moments, returned to the van and drove away.
*341 At about 11:30 PM, Officer Farve observed a van (Lie # T518984) park in front of the complex. Two negro females exited the van and went directly to apartment “D”. One of the females knocked at the door and was met at the threshold by Pickett. The pair appeared to exchange objects in the doorway. Pickett reentered his apartment and the females walked to the van, entered and drove away ...
(Appeal record, pp. 86-87).
Defendant contends that the arrest of the two men in the green Buick was made without probable cause and therefore should not have been considered as a factor in determining whether there was probable cause for the issuance of the search warrant. Defendant argues that, without this information, the application for search warrant did not set forth probable cause for the issuance of the search warrant.
The First Circuit Court of Appeal in State v. Beach, 610 So.2d 908 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1252 (La.1993) was presented with a similar situation. The defendant in Beach argued that the search warrant was defective as the affidavit supporting the application for search warrant relied upon evidence seized and confessions made as a result of the arrest of two people who had just engaged in a drug transaction with the defendant. The court first questioned whether the defendant had standing to raise the illegality of the evidence seized as a result of the arrest and then stated
[a] person adversely affected by a confession unlawfully obtained from another has no standing to raise its illegality in court. State v. Burdgess, 434 So.2d 1062, 1064-1065 (La.1983); State v. Peters, 542 So.2d 592, 595 (La.App. 1st Cir.1989). Even if the police unlawfully stopped the Feed-backs’ vehicle, thus rendering the subsequent search, seizure of evidence, and confession inadmissible, such information could nevertheless be utilized as crucial part of the showing of probable cause in the affidavit in support of the search warrant for the defendant’s ^apartment. See State v. Culotta, 343 So.2d 977 (La.1976); State v. Bearden, 449 So.2d 1109, 1118 (La.App. 5th Cir. [1984]), writ denied, 452 So.2d 179 (La.1984).
State v. Beach, supra at 912-913.
In the present ease, defendant did not introduce any evidence at the suppression hearing to suggest that the officers did not have probable cause to arrest the two subjects in the green Buick. Under Code of Criminal Procedure article 703(D), the defendant had the burden of proving the grounds of his motion to suppress. As the defendant failed to introduce any evidence concerning the stop and arrest of the subjects in the green Buick, he failed to show that the arrest of those two parties was without probable cause. Furthermore, as the First Circuit noted, even if the cocaine seized subsequent to the arrest to the two subjects was seized illegally, the information could still be used to establish probable cause in the affidavit in support of the search warrant for defendant’s apartment.
In support of his argument, the defendant mistakenly relies upon State v. Kinnemann, 337 So.2d 441 (La.1976) and its progeny. In Kinnemann and the cases cited by defendant, the parties who were arrested as a result of the warrantless stops and searches were seeking review of their convictions. For example, in Kinnemann, one of the defendants, Sahuque, appealed his conviction for possession of marijuana. He argued that the police did not have probable cause to arrest him. Sahuque and his two companions had been under surveillance upon leaving a house which the officers were informed was being used for the distribution of marijuana and cocaine.
A review of the affidavit submitted by Detective Wethern reveals that the totality of the circumstances cited in the affidavit was sufficient to establish probable cause. The officer stated that several confidential informants indicated that the defendant and Pickett were engaged in drug trafficking from their apartments. One of the informants was noted to have been proven reliable in the past. The party who made a complaint with Officer Clark appeared to be a citizen and probably was someone who lived nearby. As such, this informant is presumed to be a credible source of information. State v. Mor *342 ris, 444 So.2d 1200, 1203 (La.1984); State v. Scott, 630 So.2d 630, 633 (La.App. 4th Cir.1988). Further, the officers were able to corroborate this information through their surveillance of the defendant and Pickett. The officers also noted in the affidavit that they arrested defendant json two occasions during the surveillance period, once for possession of a firearm by a convicted felon and possession of marijuana and once for possession of cocaine. Even without the information on the cocaine seized from the occupants in the green Buick, there was sufficient evidence in the affidavit for the magistrate to have found that there was a reasonable probability that contraband would be found in the defendant’s apartment.
Defendant’s argument that the case at bar is factually similar to the facts in State v. Tate, 623 So.2d 908 (La.App. 4th Cir.1993), writ denied, 629 So.2d 1126, 1140 (La.1993) is without merit. In State v. Tate, the validity of four search warrants were at issue at the suppression heating. The search warrant referred to by defendant in his brief was the search warrant issued to search the home of Archie Tate because “it was learned that Archie Tate was Patricia Tate’s uncle.” Tate, supra at 912. Information from confidential informants and surveillance conducted by the police indicated that Patricia Tate and several family members were involved in cocaine trafficking. At the suppression hearing, the officers testified that on one occasion they stopped Archie Tate “but because he was found to be in no violation of the law, he was released.” Id. Unlike Archie Tate, the defendant had been stopped twice and was found to be in possession of a firearm, marijuana and cocaine.
Defendant’s assignment of error is without merit.
Accordingly, the defendant’s conviction and sentence are affirmed.

AFFIRMED.