| iTHIBODEAUX, Judge,
dissenting.
I dissent from the majority’s affirmance of the trial court’s refusal to suppress the defendant’s confession and inculpatory statements.
Under the bright line rule established in Edwards v. Arizona, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378 (1981), a suspect who has “expressed his desire to deal with the police only through counsel, ... [cannot be] subjected] to further interrogation by the authorities until counsel has been made available to him” unless he himself reinitiates contact with the police. State v. Tart, 93-0772 (La.2/9/96); 672 So.2d 116, 128. A defendant’s right to termination of questioning must be “scrupulously honored” once he invokes his privilege against self-incrimination. State v. Koon, 96-1208 (La.5/20/97); - So.2d - [1997 WL 261370]. In this case, it was not.
Citing State v. Ross, 572 So.2d 238 (La. App. 1 Cir.1990), this court noted in State v. Fisher, 626 So.2d 548, 550 (La.App. 3 Cir. 1993):
The statements of an accused, whether exculpatory or inculpatory, when made during a custodial interrogation, should be suppressed unless the accused is first advised of, and subsequently waives, his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), U.S. Const. Amend. V, VI, La. Const. art. I, Section 13. When an accused asserts his right to counsel, the police must scrupulously hon- or the invocation of the right and interrogation must cease. State v. Harper, 430 So.2d 627, 633 (La.1983); State v. Campbell, 461 So.2d 644, 648 (La.App. 1 Cir. 1984), writ denied, 466 So.2d 1299 (La.1985).
An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); State v. Arceneaux, 425 So.2d 740, 744 (La.1983); State v. Campbell, 461 So.2d at 648. Furthermore, even when the accused initiates further communication, exchanges, or conversation with the police, and reinterrogation follows, the prosecution still has the burden of showing that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation. Oregon v. Bradshaw, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405(1983); State v. Carr, 530 So.2d 579, 587 (La.App. 1 Cir.), writ denied, 533 So.2d 354 (La.1988), cert denied, 489 U.S. 1098, 109 S.Ct. 1573, 103 L.Ed.2d 939 (1989).
When the accused initiates the exchange with the police, the state must prove that the defendant’s waiver of his right to silence and right to counsel was knowing and intelligent “under the totality of the circumstances, including the necessary fact that the accused, *233 not the police, reopened the dialogue.” This determination depends upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405; See also, State v. Tart, 672 So.2d 116.
Donald DeLouehe, Director of the Lake Charles Violent Crimes Task Force, testified he supervised the investigation of the murder of Arnold Keith Davis. He and the other investigators identified the defendant as a suspect, and obtained a | ^warrant for his arrest. They arrived at the defendant’s trader, placed him under arrest, and informed him of his rights. While at the trailer, the defendant agreed to answer questions and did not request an attorney. He also signed a waiver of rights form and signed a form indicating he had voluntarily permitted the police to search his trailer. The defendant did not make any statements as he was transported to the Office of the Violent Crimes Task Force. While at that office, Sergeant Denise Hughes reviewed a rights form with the defendant which he signed. She also reviewed the waiver of rights form with the defendant and, at that point, the defendant indicated he wanted to talk to an attorney. Sergeant Hughes concluded the interview, but told the defendant this would be the only chance he would have to tell his story. Sergeant Hughes then gave the defendant a copy of the arrest warrant. Reeves then said, “[W]ait a minute, I didn’t shoot anybody in the back of the head. I want to tell ya’ll what happened.” DeLouehe testified further:
And she said, wait a minute, do you want to talk to us or not? And he said, basically, yes, I want to talk to you. And so at that time I made those — I was signing the form. She had handed me the form to sign, and so I flipped the form over and it says, 1:53 P.M., says he wants to talk to an attorney; Denise ends interview and tells him this was his only chance to tell his story. And then 1:54 P.M. he says he changed his mind and wants to talk. I made those notes on the back of the form.
DeLouehe stated that the Reeves’ confession was videotaped. He was advised of his rights again on the videotape and he acknowledged that he understood his rights. After making the taped statement, Reeves was transported back to the Calcasieu Parish Jail where he was booked. DeLouehe testified that Reeves called the Violent Crimes Task Force the next day and asked them to come to the jail and talk to him again. De-Louehe and Hughes complied. Reeves was again advised of his rights and signed another waiver of rights form.
pSergeant Hughes, a detective with the Lake Charles Police Department assigned to the Violent Crimes Task Force, was the lead investigator in this case. She gave Reeves a copy of the warrant for his arrest, with the affidavit supporting the warrant attached, and he read the documents. She testified she was not aware that the affidavit was attached to the arrest warrant. She also testified that giving a defendant a copy of the arrest warrant was not part of the booking procedure.
Deputy Michael David Soileau was working the night patrol shift at the Calcasieu Parish Sheriffs Department when Reeves was brought into the booking area after he had spoken with Sergeant Hughes. While Reeves was being fingerprinted and booked, Deputy Soileau heard him “yell out real loud that he had killed that son of a b-be-
cause he was a queer and he kept messing with him, so he killed him.”
Deputy Kenneth Higginbotham testified he heard the defendant say that he was the one who killed “the guy because he was a faggot” as he was being booked by Deputies Richard and Brady. Deputy Higginbotham testified that he did not hear the exact questions the two deputies were asking the defendant, but he thought that they were soliciting routine booking information from him and were not interrogating him. He testified that Reeves did not appear to be emotionally upset as he was talking to the deputies.
Deputy Brady of the Calcasieu Parish Sheriffs Office was working as the intake officer on November 3, 1994. Deputy Brady did not testify at the suppression hearing, but he testified at trial. He took the defendant’s fingerprints and booked him. Regarding his exchange with Reeves he testified:
*234 “... he was just coming in the jail and I asked him why he came in, why he was here. And then he stated if I remember right, that he had killed somebody. And I said, “You killed somebody?” He said, “Yeah, I killed him.” I said, “Well why did you kill him?” He said, “Because he’s a faggot and I don’t like faggots.” And I said, “You killed one faggot to come into a jail where they have literally hundreds of 'em?” And he didn’t say anything. And then | she said, ‘Well, if he wouldn’t of messed with me, I think at my sister’s grave, or my mother’s grave, that I wouldn’t have killed him.”
On cross-examination, defense counsel questioned Deputy Brady about who had initiated the conversation:
Q. And, Mr. Brady, you were the one that initiated the conversation with Mr. Reeves, were you not?
A. Yes, sir.
Q. And you asked him directly something about the case and his — what caused him to be arrested?
A. Yes, sir.
Q. He didn’t come in and voluntarily popping off and begin to make remarks about homosexuals and faggots and things of this nature?
A. No, sir.
Q. It was only after you questioned him that he made that comment?
A. Yes, sir, I asked him why he was in the pen.
Q. And he said he killed someone?
A. Yes, sir.
Q. And you asked him why?
A. Yes, sir.
Can the actions of the law enforcement officers be construed as further interrogation of the defendant in violation of his Fifth Amendment right to counsel? There are three (3) instances in this case where Reeves made statements to the police before receiving the advice of counsel. They are as follows: (1) his initial statement to Sergeant Hughes and the subsequent videotaped confession; (2) statements made by Reeves during the booking process; and, (3) statements made by Reeves when he asked Sergeant Hughes and Detective DeLouche to speak with them the following day.
16l- The Defendant’s initial statement to Sergeant Hughes and his subsequent videotaped confession.
Did Sergeant Hughes reinitiate the interrogation of Reeves when she told him he would not have another opportunity to tell his side of the story and gave him the copy of the arrest report and affidavit after he asked for an attorney? I think so. Should the officers have ceased their interrogation and not make any further comments to him after he invoked his right to counsel? I think so. Should a seasoned and experienced law enforcement officer such as Detective Hughes have been aware that telling the defendant he would not have another opportunity to tell his side of the story and giving him the arrest report and affidavit after he requested an attorney would reasonably be likely to elicit an incriminating response? I think so.
In State v. Abadie, 612 So.2d 1 (La.1993), the court determined that police attempts to get the defendant to submit to questioning about a murder as part of a polygraph examination amounted to “reapproaeh” or “reinitiation” of interrogation because the officer should have reasonably known that the suspect would believe this conduct was designed to elicit an incriminating response from him and, as the officer admitted, the polygraph was an attempt to question him further about the murder. The court set forth a two-step analysis to determine the admissibility of confessions made by a defendant after he has invoked his right to counsel. The court stated:
... it must first be asked whether defendant “initiated” further conversation, and if the answer is yes it then must be inquired whether defendant waived his right to counsel and to silence, “that is, whether the purported waiver was knowing and intelligent * * * under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.” Oregon v. Bradshaw, 462 U.S. 1039, 1044-46, 103 *235 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983); See LaFave & Israel, Sect, 6.9 at 538.
Id.- at 5.
Citing Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the court in Abadie concluded that under Miranda, interrogation includes not only 17“express questions,” but also “any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.” Abadie, 612 So.2d at 6. The court went on to state:
This is an objective test which does not require a determination of the actual perception of the suspect but prohibits police speech or conduct that creates a situation in which the suspect probably will experience the functional equivalent of direct questioning by concluding that the police are trying to get him to make an incriminating response. Lafave & Israel, Criminal Procedure Sect. 6.7, p. 501-02. (1984 & supp.1991); White, Interrogation Without Questions: Rhode Island v. Innis and United States v. Henry, 78 Mich.L.Rev. 1209, 1231-32 (1980).

Id.

The conduct of Sergeant Hughes amounted to a reapproach which she should have known would be reasonably likely to elicit an incriminating response from the defendant. Although she stated that she was unaware that the affidavit was attached to the arrest warrant, she also testified that providing a suspect with an arrest warrant and affidavit was not a normal part of the booking procedure. Therefore, Sergeant Hughes’ conduct qualifies as a reinitiation of contact which vitiates the validity of any waiver of rights by Reeves. Thus, Reeves’ videotaped confession should be suppressed.
2. Statements made by the Defendant during the booking procedure
Reeves invoked his right to counsel before he was booked by Deputy Brady, and knowledge of this invocation must be imputed to the officer. Even though Deputy Brady testified his intention was not to interrogate Reeves, he admitted that he initiated contact with the defendant, and he directly asked the defendant why he had been arrested. Thus, the statement made to Deputy Brady should ^ave ^een suPPressed-
Is3. Statements made by the Defendant to Sergeant Hughes & Detective DeLouche
Before a confession may be introduced into evidence, the state has the burden of proving that it was freely and voluntarily given, and not made under the influence of fear, duress, intimidation, menaces, inducements, or promises. La.R.S. 14:451; La.Code Crim.P. art. 703(D). In Louisiana, the statutorily-mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary. State v. Jackson, 381 So.2d 485 (La.1980). The state has the burden of affirmatively proving that the confession was free and voluntary. La.Code Crim.P. art. 703(D); La.R.S. 15:451.
The rule set forth by La.R.S. 15:451 complements the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) which deals with the Fifth and Fourteenth Amendment prohibitions against compelled self-incrimination. Under Miranda, a condition precedent to obtaining a statement admissible in court from a suspect in police custody is that the suspect be informed that he has the right to remain silent and to consult with an attorney. Miranda also made it clear that for such a statement to be admissible, it must be made with a knowing and intelligent waiver of those rights. State v. Green, 94-0887 (La.5/22/95); 655 So.2d 272. Miranda waivers may be either explicit or implicit, North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); State v. Harvill, 403 So.2d 706 (La.1981), and their validity turns on the totality of the circumstances surrounding the statement. Butler, 441 U.S. at 374-375, 99 S.Ct. at 1757-1758.
Reeves contacted Sergeant Hughes and Detective DeLouche the day following his videotaped confession of his own accord and he informed them that the gun he used to commit the murder was stolen and he asked the officers what was going to happen to him. *236 Although the facts suggest that Reeves reini-tiated contact with thejgofficers, that he was readvised of his Miranda rights and that he signed forms indicating he waived these rights, when viewing the facts of this case as a whole, these statements appear to be tainted by the previous violations of Reeves’ right to counsel. Furthermore, it appears that Reeves basically reiterated information he had already provided to the police.
I cannot say that the error in admitting the incriminating statements was insignificant nor can I say that the verdict was “surely unattributable to the error.” State v. Koon at 9, — So.2d at -. Thus, it was not harmless.
I respectfully dissent.