700 So.2d 242 (1997)
STATE of Louisiana
v.
Rickey CEASAR.
No. 97-K-1506.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 1997.
Richard V. Kohnke, Thomas D. Dunn, New Orleans, for Defendant/Respondent Rickey Ceasar.
*243 Harry F. Connick, Dist. Atty., Suzanne Dickey, Asst. Dist. Atty. of Orleans Parish, Annelise Strader, Law Clerk, New Orleans, for Relator State.
Before LOBRANO, ARMSTRONG and MURRAY, JJ.
MURRAY, Judge.
The State seeks reversal of a trial court ruling granting defendant's motion to suppress. For the following reasons, we reverse.
Rickey Ceasar was arrested on March 12, 1996. The events surrounding that arrest are as follows: Officer Harry O'Neal and several other officers were summoned to the corner of Soniat and Camp Streets to assist in an investigation of an armed robbery. The victim had sustained numerous lacerations to the face. He told the officers that a man named Rickey who lived at 933 Soniat Street had pistol whipped him and then robbed him at gun point. While this information was being given, the defendant, Rickey Ceasar, arrived on the scene. The victim made a positive identification of Mr. Ceasar as the assailant. Mr. Ceasar was advised that he was under arrest, at which time he became angry and accused the victim of initiating the confrontation. Mr. Ceasar denied owning a firearm, but admitted that he had a tire tool, which was in the kitchen of his girlfriend's house at 933 Soniat Street. Officer O'Neal testified that he believed it incumbent upon the investigating officers to ascertain just what instrument had been used in the altercation. The handcuffs were taken off Mr. Ceasar so that he could unlock the door to the house. He then led the officers into the kitchen. When the officers entered the kitchen, Mr. Ceasar suddenly remembered that he had put the tire tool in his car. The officers, however, had already spotted, on the top of the microwave, a line of white material that Officer O'Neal believed to be crack cocaine, two bags of powdered cocaine, baking soda and a test tube, items used in the manufacture of crack cocaine, and small amounts of marijuana. Following this discovery, the officers advised Mr. Ceasar that he also was being arrested for possession of drugs. They also informed him that they were going to obtain a search warrant for the premises and inquired about the owner of the house. Mr. Ceasar stated that he would give them a formal statement that the drugs belonged to him, and that his girlfriend had no involvement, if they did not arrest his girlfriend, in whose house the drugs were found. Mr. Ceasar then was taken to the police station, where he was formally advised of his rights, and signed the Rights of Arrestee form. After this had been done he gave the officers a formal statement, in which he responded to the officer's questions as follows:
"Does she allow cocaine or marijuana to be sold from your house?" "No." "How is it that we found cocaine powder, crack, and marijuana at 933 Soniat?" "It was mine, I brought it there." "Did Eunice Foster know you brought it there?" "No." "How come she didn't know the drugs were there?" "I hid them from her and didn't let her know I was bringing it into the house."
Rickey Ceasar was arrested again on June 11, 1996. The events surrounding that arrest are as follows: On June 10, Officer O'Neal received a call from the victim of the alleged armed robbery on March 12, who stated that Rickey Ceasar was again "doing business at 933 Soniat." Officer O'Neal ran a check on Mr. Ceasar at that time, and determined that there were two outstanding bench warrants relative to his failure to appear in Criminal District Court in connection with the earlier charge. Officer O'Neal confirmed that these warrants were still good. On June 11, before Officer O'Neal had taken any further action, the same man called again to inform him that Mr. Ceasar had just entered the house at 933 Soniat.
Officer O'Neal and several other officers went to 933 Soniat and knocked on the door. Mr. Ceasar, who looked out of the window in response to the officers' knock, was informed by Officer O'Neal that he had a warrant for his arrest. When Mr. Ceasar refused to open the door, the officers told him that they would force entry if necessary. A few minutes later Mr. Ceasar opened the door, the *244 officers entered, and arrested him.[1]
Officer O'Neal testified that based on Mr. Ceasar's refusal to open the door, his prior statement that he possesses drugs at 933 Soniat when his girlfriend is not home, and the information from the informant that Mr. Ceasar was again "doing business," he believed that drugs were on the premises. The other officers continued to detain Mr. Ceasar at 933 Soniat while Officer O'Neal obtained a search warrant. The affidavit prepared by Officer O'Neal to obtain the search warrant contained basically the same information.
When Officer O'Neal returned with the warrant, he advised Mr. Ceasar that if drugs were found "that Ms. Foster [the girlfriend] was going to jail this time unless he cooperated." Mr. Ceasar stated, as he had done in March, that the drugs were his and that his girlfriend had no involvement. He then told the officers that drugs were hidden in a toy box belonging to his girlfriend's daughter. When the officers opened the toy box they found a plastic bag containing thirteen pieces of crack cocaine. A drug detection dog, summoned to the scene, located in a drawer, approximately $300 in cash and several subpoenas directed to Rickey Ceasar. Mr. Ceasar subsequently was charged with possession of cocaine.
At the motion hearing, Officer O'Neal testified, in response to questions by defense counsel, that he questioned Mr. Ceasar after he returned with the search warrant. The officer admitted that, during that questioning, he told Mr. Ceasar that his girlfriend also would be arrested if drugs were found in the house. Officer O'Neal also admitted that he thought he knew defense counsel represented Mr. Ceasar in the earlier case. Immediately following these admissions, the court advised counsel that he need not go any further with his questioning. Defense counsel, however, asked to continue questioning Officer O'Neal.
Officer O'Neal then confirmed that his suspicion on June 11 that drugs were again on the premises of 933 Soniat on June 11 was based primarily on the statement that Mr. Ceasar gave in March, that if he had drugs at the Soniat Street house, it was because his girlfriend was not there. Counsel then had Officer O'Neal read the statement into the record. The officer again confirmed that it was his belief that if Mr. Ceasar "was at home and Eunice Foster was not home, and he was going to have drugs, then that would be the time he would have them."
The trial court agreed to leave the matter open as to the March 12 arrest, because a defense witness was not available. The court then asked defense counsel if he represented Mr. Ceasar on the second charge, to which counsel responded affirmatively. The court continued:
And, this officer knows that you represent the Defendant. He knows that there are current cases that are still current that you represent the Defendant. It fits on all four corners with Mississippi versus Mimms.[2]
In furtherance of the case of June 11th, also, you're going to have to look at United States versus Leon, where even though the Magistrate had signed the search warrant it doesn't go unbound. The Judge can review that and determine whether or not there was probable cause even after he signed it, and that's what United States versus Leon, stands for.
So, on that count, I suppress the evidence in that case.
We infer from these remarks that the evidence seized on June 11 was suppressed because 1) the trial court found it improper for the police to question Mr. Ceasar because they knew he was represented by counsel for the March 12 charges; and, 2) the trial court did not find that there was sufficient probable cause to support the search warrant.
*245 We find that the trial court misinterpreted the rule set forth in Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). In Minnick, the accused was interrogated by federal agents while in custody, but the interrogation ceased when the accused requested counsel. While the accused was still in custody, a county deputy reinitiated the interrogation, telling the accused that he could not refuse to speak with him. During this interrogation, the accused confessed. The Court held that when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with an attorney. Only if the accused initiates further conversation or discussion with the authorities, may further interrogation take place.
The Minnick rule was interpreted by the Louisiana Supreme Court in State v. Abadie, 612 So.2d 1 (La.1993). The Court found that the Minnick rule is not offense-specific, stating that "once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present." (citations omitted) Id. at p. 5. However, the Court found that the rule did not apply where there had been a break in custody. As the Court noted, "... if the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial...." Id.
Mr. Ceasar obviously was not in custody when the officers spoke to him on June 11. The reason that the officers went to the Soniat Street address on that date was to arrest him on two outstanding bench warrants for his failure to appear in court. This is a major distinction between this case, Minnick and Abadie. If the Minnick-Abadie rule were applied to the situation in this case, it would preclude a police officer who knows that a person is represented by counsel on an earlier charge, from ever questioning that person about another charge, unless the counsel who represented him on the earlier charge was present, regardless of whether the person had been released from custody on the earlier charge or how much time had elapsed between the two. The rationale of the Minnick-Abadie rule cannot extend to this situation. Rickey Ceasar did not invoke his right to counsel before giving a statement in March, despite being advised of his right to do so. The fact that Officer O'Neal knew Mr. Ceasar thereafter retained counsel to represent him in connection with the March arrest is not relevant to the use of the March statement in obtaining the search warrant on June 11.
As to the second basis for the trial court's granting Mr. Ceasar's motion to suppress, in a per curiam requested by this Court, the trial court questioned the sufficiency of the informant's tip as part of the application for the warrant. The court stated that its ruling was based on United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
A magistrate's determination of probable cause to support the issuance of a warrant should be accorded great deference by the reviewing court. When considering a magistrate's finding of probable cause, the reviewing court must determine whether the "totality of the circumstances" set forth in the affidavit is sufficient to allow the magistrate
to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a reasonable probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclu[ding]" that probable cause existed.
Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); see also State v. Isaac, 93-2094 (La.App. 4 Cir. 7/9/94), 639 So.2d 337, writ denied, 94-1892 (La.11/29/94), 646 So.2d 398.
Deference to the magistrate, however, is not boundless. A reviewing court must inquire into the knowing or reckless falsity of the affidavit on which the magistrate's determination *246 was based. Leon, 468 U.S. at 914, 104 S.Ct. at 3416.
Mr. Ceasar claims that Officer O'Neal's conclusion that if Rickey Ceasar was at 933 Soniat without his girlfriend, he was in possession of cocaine, was an erroneous general conclusion. He contends that this erroneous conclusion, which was included in the affidavit supporting the search warrant, misrepresented what he actually said in his March statement. He argues that this misrepresentation invalidates the search warrant so that evidence seized during the execution of the warrant should be suppressed.
The record does not support this argument. An affidavit supporting a search warrant is presumed to be valid and a defendant has the burden of proving that the representations in the affidavit are false. State v. Brown, 93-2089, p. 6 (La.App. 4 Cir. 12/16/94), 647 So.2d 1250, 1253. Making a material and intentional misrepresentation to the magistrate involves a fraud upon the courts and will result in the invalidation of the warrant and suppression of the items seized. Id. at p. 5, 1252. "Intentional," in this context, means a deliberate act designed to deceive the issuing magistrate. State v. Lamartiniere, 362 So.2d 526 (La.1978); Brown, 93-2089 at p. 6, 647 So.2d at 1253. Officer O'Neal's statements in the affidavit do not appear to be a deliberate act designed to deceive the issuing magistrate as to constitute a fraud upon the court. Consequently, although Mr. Ceasar has called in question the officer's logic in reaching certain conclusions, that faulty logic is not an intentional misrepresentation so as to invalidate the magistrate's finding of probable cause. See State v. Byrd, 568 So.2d 554 (La.1990).
We also note that there would be sufficient information in the affidavit to support probable cause even if the criminal intent information were excised from the affidavit. We find that, under the totality of the circumstances, there was sufficient probable cause to support the issuance of the search warrant on June 11. We find, therefore, that the trial court erred in granting Mr. Ceasar's motion to suppress, and reverse that ruling.
WRIT GRANTED; JUDGMENT REVERSED.
ARMSTRONG, J., concurs.
NOTES
[1] We note that in his affidavit in support of the search warrant request, Officer O'Neal stated that before opening the door, Mr. Ceasar retreated into the house. Officer O'Neal did not, however, testify to this fact at the suppression hearing.
[2] We have determined that the case to which the trial court referred is in fact Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).