965 So.2d 541 (2007)
STATE of Louisiana, Appellee
v.
Roy Lee WILLIAMS, Appellant.
No. 42,312-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
Opinion on Rehearing October 1, 2007.
*542 Capital Assistance Project of LA, Inc. by Richard C. Goorley, Ansel M. Stroud, III, Elton B. Richey, Jr., Shreveport, Louisiana Appellate Project by Peggy J. Sullivan, Monroe, Daryl Gold, Shreveport, for Appellant.
Roy Lee Williams, pro se.
Harry J. Morel, Jr., District Attorney, Kim K. McElwee, Assistant District Attorney, for Appellee.
Before WILLIAMS, DREW and LOLLEY, JJ.
WILLIAMS, Judge.
The defendant, Roy Lee Williams, was charged by grand jury indictment with first degree murder, a violation of LSA-R.S. 14:30, and aggravated kidnapping, a violation of LSA-R.S. 14:44. The defendant entered a plea of guilty to first degree murder, reserving the right to appeal certain pretrial issues pursuant to State v. Crosby, 338 So.2d 584 (La.1976). In return, the state dismissed the remaining charge and agreed to the imposition of a life sentence, reserving the right to seek the death penalty pending the outcome of this appeal. The district court sentenced defendant to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction. For the following reasons, we reverse, grant the motion to suppress, vacate the guilty plea and sentence and remand.

FACTS
Mrs. Avis Foster, age 73, was kidnapped from her Coushatta home in the early morning hours of Sunday, February 1, 2004. Her vehicle was stolen and her body was found abandoned in Natchitoches. The victim had been beaten, raped and strangled.
On Tuesday, February 3, 2004, (then Captain, later Chief Deputy) Tracy Scott of the Red River Parish Sheriff's Office received information that the victim's vehicle was located in Alexandria. Captain Scott and Travis Trammell (Chief of Criminal Investigations, Natchitoches Parish Sheriff's Office), who had been jointly assigned to handle the Foster murder investigation, drove to Alexandria to recover the vehicle in furtherance of their investigation. The vehicle's driver, in a subsequent interview, told police that he rented the car from a person who was later identified as the defendant. Having developed *543 the defendant as a suspect, Captain Scott secured a copy of a parole violation warrant issued for defendant in December 2003. Cpt. Scott requested Rapides authorities to arrest defendant on the outstanding parole warrant. Shortly after 9:00 p.m. that evening, defendant was arrested by Alexandria Police Corporal Carla Whitstine and transported to the police department, where Cpt. Scott and Chief Trammell met with the defendant at approximately 9:25 p.m.
At the initial interview, Chief Trammell advised defendant of his Miranda rights both orally and in writing. Scott and Trammell explained that they were investigating the missing vehicle and murder of Mrs. Foster. The defendant refused to waive his rights, and said he needed to talk to a lawyer. At that point, the investigators stopped questioning defendant. Cpl. Whitstine then transferred defendant to the Rapides Parish Jail, booking him on the parole violation warrant. Cpl. Whitstine advised defendant of his Miranda rights at the jail, but did not ask him any questions. At midnight, the defendant was transferred to the Natchitoches Detention Center.
On February 4, 2004, the district court issued a warrant for defendant's arrest for unauthorized use of Mrs. Foster's motor vehicle. At 3:30 p.m. that afternoon, Red River Parish Detective Johnny Taylor, accompanied by Natchitoches Parish Sheriff Victor Jones, served the arrest warrant on defendant at the Natchitoches Detention Center. Detective Taylor, who knew defendant personally, stated that they were there to arrest him for unauthorized use of a motor vehicle. After Det. Taylor read defendant his Miranda rights the defendant signed the "Waiver of Rights" form. Sheriff Jones then told defendant that if he wanted to talk with Taylor he needed to make a written request. Defendant prepared a handwritten request to "see Johnny Taylor." Defendant then admitted taking Mrs. Foster's car, but denied any involvement in her murder. This statement was not recorded and neither Jones nor Taylor took notes. When Sheriff Jones asked defendant if he would give a written or recorded statement, the defendant responded that he probably would, but only in the presence of an attorney. After this second request for counsel, the interrogation ended.
The next day, February 5, 2004, Louisiana Parole Officer Alvie Myers visited defendant at the Natchitoches Detention Center to serve notice of a preliminary hearing and to advise defendant of the parole violation charges against him. When Myers entered the room, defendant said he wanted to talk about his "situation." Officer Myers explained that he needed to complete the administrative paperwork first, and then they could talk. After advising defendant of his parole revocation rights and completing the paperwork, Myers asked if he still wanted to talk. When defendant said yes, Myers stated that he first needed to advise defendant of his rights and have him sign an advice of rights form. Myers read defendant his Miranda rights and defendant signed a waiver of the rights. Defendant then gave a statement that was factually consistent with the statement he had given to Detective Taylor and Sheriff Jones the previous day.
Defendant then asked Myers if he could speak with Sheriff Jones, who was standing just outside the room. After conferring with Sheriff Jones, Myers told defendant that he would need to make a written request before Jones would talk with him. The defendant complied with this instruction and a short time later Sheriff Jones met with him. After being Mirandized, defendant made another statement *544 consistent with his prior statements. When Jones asked if he would give a written or recorded statement defendant replied that he probably would, but only with a lawyer. After this third request for an attorney, the interview was terminated.
On February 13, 2004, the defendant was still in custody at the Natchitoches Detention Center without having seen an attorney or being brought before a judge. On that date, Michael Wilson (Assistant Chief Investigator of the Natchitoches Parish Sheriff's Office) was at the jail and stopped at defendant's cell ostensibly to speak with another inmate. While Wilson was there, defendant asked if he could also speak with him. However, Wilson said defendant needed to make a request in writing.
After receiving the defendant's written request, Wilson met with him on February 18, 2004. More than two weeks after his arrest and his first request for a lawyer, the defendant still had not been to court or seen an attorney. Wilson advised defendant of his Miranda rights, which he waived. Defendant made yet another statement consistent with all of his prior statements (i.e., he admitted going to the Foster residence and taking her car, but denied killing her). When defendant said he would like to talk further but wanted to speak with an attorney first, the interrogation ceased. On February 24, 2004, Asst. Chief Wilson arrested defendant for first degree murder pursuant to a warrant. Wilson advised defendant of his Miranda rights and defendant chose not to give a statement at that time.
The first hearing of any kind in this matter was held on February 26, 2004. The record indicates that it was a "72-hour hearing" relating to the first degree murder charge. Although there was a notation on the Hearing Report stating "appoint attorney," there is no documentation that shows the appointment of a lawyer until March 10, 2004, when the Capital Assistance Project of Louisiana was appointed as counsel.
On March 22, 2004, Paula Allen (the mother of defendant's child) spoke with Det. Taylor at the Red River Parish Sheriff's Office, informing him that she had recently visited with defendant and he wanted to talk. Taylor told Allen that defendant would need to make a written request for him to do so. After receiving defendant's written request, Det. Taylor met with him on March 23, 2004. Det. Taylor advised defendant of his Miranda rights, which defendant agreed to waive. After some "small talk," Taylor asked defendant if he had spoken with an attorney. Defendant said he had talked with a lawyer. Taylor then told defendant that he was in a lot of trouble and that the state would seek the death penalty. According to Taylor, the defendant stated that God had forgiven him. When Det. Taylor asked defendant to explain what happened between the time defendant left in Mrs. Foster's vehicle until the next morning, he did not answer. Taylor stated that this interview was not recorded, that he did not take any notes and that he later prepared a report based on his memory of the interview.
Defendant was indicted for first degree murder and aggravated kidnapping. In October 2004, defendant filed a motion to suppress his inculpatory statements. After a hearing, the district court denied defendant's motion, finding that defendant was advised of his Miranda rights before each of the challenged statements, that before giving each statement defendant had made a written request to speak with law enforcement officials and that the statements were free and voluntary.
Subsequently, the defendant entered a Crosby plea of guilty to the first degree *545 murder charge. The aggravated kidnapping charge was dismissed and he was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant appeals, asserting as error the denial of his motion to suppress, the failure to have a 72-hour hearing, and the untimely appointment of counsel.

DISCUSSION
In two assignments of error, the defendant contends the district court erred in denying his motion to suppress all statements made to police after invoking his right to counsel. Defendant argues that his constitutional rights were violated when police interrogated him on five occasions without the benefit of counsel despite his request to see an attorney when he initially spoke with investigators.
The state has the burden of proving that a statement given by a defendant was freely and voluntarily made, not the product of threats, promises, coercion or intimidation. LSA-R.S. 15:451; State v. Hohn, 95-2612 (La.App. 4th Cir.1/19/96), 668 So.2d 454. To establish the admissibility of a statement made by an accused in custodial interrogation, the state must prove that the accused was advised of his Miranda rights and that he waived these rights prior to interrogation. State v. Hohn, supra.
Regarding requests for counsel, the Louisiana Supreme Court stated in State v. Hobley, 98-2460 (La.12/15/99), 752 So.2d 771, 788, cert. denied, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 61 (2000):
[O]nce a suspect in custody expresses a desire, at any stage in the process, to deal with the police only through counsel, all questioning must cease, and the accused may not be subject to further interrogation until counsel has been made available to him, unless he initiates further communication, exchanges or conversation with the police and validly waives his earlier request for counsel. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); Miranda, 384 U.S. at 444-45, 86 S.Ct. at 1612. Miranda and Edwards are prophylactic rules designed to protect an accused against the inherently compelling pressures of custodial interrogation, whether by police badgering, overreaching or subtle but repeated efforts to wear down an accused's resistance and make him change his mind. Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983). Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), reaffirmed Edwards, stating that "when counsel is requested, interrogation must cease; and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." Id. at 153, 111 S.Ct. at 491. Louisiana adheres to these same principles. When an accused invokes his right to counsel, the admissibility of a subsequent confession or incriminating statement is determined by a two-step inquiry: 1) did the accused initiate further conversation or communication; and 2) was the purported waiver of counsel knowing and intelligent under the totality of the circumstances. State v. Abadie, 612 So.2d 1, 5 (La.1993).
When an accused asks for counsel, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated, custodial interrogation even if he has been advised of his rights. Hohn, supra. The validity of a waiver of rights is determined on a case-by-case basis under the totality of the circumstances. State v. Coston, 98-0470 (La. App. 4th Cir.9/16/98), 720 So.2d 714. Moreover, the Edwards rule is not *546 offense specific; once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be re-approached regarding any offense unless counsel is present. Abadie, supra.
In the present case, the record shows that defendant invoked his right to counsel during the February 3, 2004 interrogation. Thereafter, the police approached defendant in connection with the criminal investigation without his counsel present. This case raises the issue of whether defendant initiated further communication with investigators before they interrogated him in the absence of counsel.
On February 4, 2004, Det. Taylor and Sheriff Jones approached defendant regarding the Foster murder investigation. Although the investigators purportedly contacted the defendant only to serve a warrant for unauthorized use of a motor vehicle, once the defendant invoked his Miranda right to counsel for interrogation for one offense, he could not be further approached regarding any other offense without counsel present. Despite defendant's earlier request for an attorney, the investigators initiated an investigatory encounter with defendant in the absence of counsel. Thus, the state could not establish a valid waiver of Miranda rights by defendant, who was responding to police-initiated custodial interrogation.
Similarly, on February 5, 2004, a state probation officer, Alvie Myers, contacted defendant regarding the parole violation charges and important procedural rights of defendant in connection with parole revocation. This meeting, which took place in the absence of counsel, elicited another statement from defendant and generated his written request to speak with Sheriff Jones. Contrary to the state's contention, defendant's handwritten note was not an initiation of communication with police, but resulted from the state's re-approach during its continuing investigation. Additionally, during the interview defendant repeated his request for an attorney.
Nor did defendant initiate the final two police interviews conducted without the benefit of counsel. On each of these occasions the defendant wrote a "request" to speak with police in response to the instructions of investigators who failed to provide defendant with an attorney and refused to communicate with him by any other method. For example, when Asst. Chief Wilson appeared at his cell on February 13, 2004, defendant still had not seen an attorney despite three previous requests. Wilson instructed the defendant to submit a written note before speaking with him about any matter. At the subsequent meeting, defendant made his fourth request for an attorney after giving a statement.
The circumstances surrounding defendant's March 23, 2004 interview are not clear from the testimony of Det. Taylor, who stated that he was told by Paula Allen that defendant wanted to see him. However, Taylor testified that Sheriff Jones called the Natchitoches Detention Center to instruct defendant to make a written request if he wanted to see Taylor, who knew defendant personally. Thus, defendant's written note was not a spontaneous initiation of communication with police, since it was only after Sheriff Jones re-approached defendant through the phone call, thereby reinitiating the communication and investigation in the absence of counsel and without a break in custody, that defendant asked to see Det. Taylor.
The evidence presented indicates that in each of the foregoing situations, an investigatory encounter was in progress before defendant responded by writing a note seeking to speak with a certain officer. Thus, defendant did not initiate or reopen the interrogation. The protections afforded *547 in Edwards would be rendered meaningless if government agents were permitted to reinitiate interrogation after the request for counsel and then claim that the consequent response by defendant represented "initiation" permitting a waiver of the asserted counsel right. Abadie, supra. In addition, the record demonstrates that defendant did not knowingly waive his rights, since on several occasions he repeated his request for an attorney only minutes after signing a form that stated he did not want a lawyer.
After considering the totality of the circumstances of this particular case and applying the principles of Edwards and Abadie, we must conclude that although the police interrogation stopped after defendant's initial request for counsel, the investigators reinitiated the custodial interrogation without counsel present on a number of occasions. Thus, defendant's subsequent requests to talk could not have started the police-initiated interrogation that was already in progress at the time.
Consequently, the statements made by defendant during the interviews conducted in the absence of counsel did not amount to a valid waiver and should have been suppressed as inadmissible evidence. Accordingly, we shall reverse the district court's denial of defendant's motion to suppress and vacate the guilty plea and sentence. In reaching this result, we pre-termit discussion of defendant's remaining assignment of error.

CONCLUSION
For the foregoing reasons, the district court's denial of the motion to suppress defendant's statements is reversed and the motion is hereby granted. The guilty plea is vacated, the sentence is set aside and this case is remanded for further proceedings.
REVERSED; MOTION TO SUPPRESS GRANTED; GUILTY PLEA AND SENTENCE VACATED; REMANDED.
DREW, J., dissents with written reasons.
DREW, J., dissenting.
The majority agrees with defense counsel that since the officers failed to immediately comply with defendant's initial request for counsel, all five of his subsequent inculpatory statements are inadmissible. I disagree. Every single one of the statements about which Williams complains[1] was made only after he himself reinitiated the interrogations.
There is no prohibition against a defendant reinitiating discussions with the police. Nothing in the Fifth or Sixth Amendment precludes a suspect, on his own initiative, and even when charged with a crime and represented by counsel, from choosing to speak with police in the absence of an attorney. The following passage from State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367, 378, is illuminating:
Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will. To hold that a defendant is inherently incapable of relinquishing his right to counsel once it is invoked would be "to imprison a man in his privileges and call it the Constitution."
*548 Our supreme court set out the general rule in State v. Hobley, 98-2460 (La.12/15/99), 752 So.2d 771, U.S. cert. denied. The majority quotes this portion of Hobley:
[O]nce a suspect in custody expresses a desire, at any stage in the process, to deal with the police only through counsel, all questioning must cease, and the accused may not be subject to further interrogation until counsel has been made available to him, unless he initiates further communication, exchanges or conversation with the police and validly waives his earlier request for counsel. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); Miranda, 384 U.S. at 444-45, 86 S.Ct. at 1612. Miranda and Edwards are prophylactic rules designed to protect an accused against the inherently compelling pressures of custodial interrogation, whether by police badgering, overreaching or subtle but repeated efforts to wear down an accused's resistance and make him change his mind. Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983). Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), reaffirmed Edwards, stating that "when counsel is requested, interrogation must cease; and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." Id. at 153, 111 S.Ct. at 491.
Louisiana adheres to these same principles. When an accused invokes his right to counsel, the admissibility of a subsequent confession or incriminating statement is determined by a two-step inquiry: 1) did the accused initiate further conversation or communication; and 2) was the purported waiver of counsel knowing and intelligent under the totality of the circumstances. State v. Abadie, 612 So.2d 1, 5 (La.1993).
(Our emphasis added.)
The ultimate finding by the Supreme Court, however, in Minnick v. Mississippi, supra, goes much further. Minnick concludes with the clear statement that even after a defendant has requested counsel, a waiver of his right to counsel may be found provided the accused initiated the discussions with authorities. This is exactly the situation in the instant case.
The facts and cited law in State v. Hobley, supra, do not support the majority's ruling herejust the opposite. Hobley's statement was admitted because it was made following his initiating contact with officers to discuss the case. Whether Hobley invoked his right to counsel after being arrested in Shreveport by Natchitoches officers was disputed. While incarcerated in the Red River Parish jail, Hobley sent a jail slip indicating he wished to speak with a Red River officer about the murder. The Red River officer questioned Hobley and contacted a Natchitoches Parish officer, who arrived, administered Miranda warnings, and questioned him. Like Williams, Hobley had previously quizzed officers about what information they possessed about the crime in question. The supreme court stated that "even accepting defendant's (Hobley's) testimony that he requested counsel after his arrest in Shreveport, we find that he initiated further communication by making a written request to discuss the crime." The supreme court found Hobley was not deprived of his rights. The facts in the instant case are much more favorable to the state.
While the confession in State v. Abadie, 612 So.2d 1 (La.1993), U.S. cert. denied, was suppressed, the facts surrounding that *549 confession are totally distinguishable from the facts at hand. After being questioned and stating he wanted to talk to his friend, a local attorney, Abadie was being driven home. The Chief of Criminal Investigations recalled the police car back to the station. There, Abadie was asked to agree to further questioning under polygraph. Abadie again asked to speak to the lawyer friend, who told Abadie he could not advise him. Abadie then requested to speak to a police officer he knew. The Chief continued to try to persuade Abadie to take a polygraph as did the officer who was his friend. After resisting, Abadie ultimately complied.
Nothing of the sort happened to Williams. Like Hobley, Williams initiated all his statements. Unlike Abadie, no law officer ever reinitiated interrogation of Williams.
In State v. Taylor, 01-1638 (La.1/14/03), 838 So.2d 729, 739, U.S. cert. denied, our supreme court stated that police are not prohibited from reinitiating contact with defendant.
When a defendant exercises his privilege against self-incrimination the validity of any subsequent waiver depends upon whether police have "scrupulously honored" his right to remain silent. Whether police have "scrupulously honored" an accused's right to silence is determined on a case-by-case basis under the totality of the circumstances. Factors going into the assessment include who initiates further questioning, although, significantly, police are not barred from reinitiating contact, (invocation of right to counsel during custodial interrogation has greater protection than invocation of right to remain silent, as police may not thereafter question defendant unless he initiates further contact); whether there has been a substantial time delay between the original request and subsequent interrogation; whether Miranda warnings are given before subsequent questioning; whether signed Miranda waivers are obtained; and, whether the later interrogation is directed at a crime that had not been the subject of the earlier questioning. (Citations omitted.)
(Our emphasis added.)
No witness disputes the facts as outlined by the law officers who testified. No witness alleges that any of the five statements were brought about through pressure, coercion, fraud, deceit, or trickery. No evidence indicates that the police reinitiated any of the five custodial interrogations. This record reflects that the defendant made five knowing and intelligent decisions to discuss the case with the officers. Only law officers testified at the motion to suppress, and nothing can be gleaned from their testimony indicating that the defendant's statements were not freely and voluntarily made. The trial court heard, saw, and believed the officers, as well as the circumstances surrounding the five inculpatory statements, each of which:
 was strikingly similar in content to the other four statements,
 was not commenced pursuant to any of the law officers' reinstituting interrogation,
 was made pursuant to defendant's requests (four in writing) to talk with the officers,
 was preceded by an explanation and waiver of his rights pursuant to Miranda,

 was bolstered by sworn testimony that Williams appeared to understand his rights, and
 was terminated, the moment Williams mentioned wanting a lawyer.
This chronology may be helpful:

*550 1. Williams was arrested on a Tuesday evening after 9:00 p.m. under authority of the parole warrant relative to his violations of his parole on his previous forcible rape conviction. He declined to be interviewed without a lawyer, but immediately started peppering the officers about the Foster case.
2. On Wednesday, he was arrested on the arrest warrant issued that morning for the unauthorized use of Mrs. Foster's vehicle. Williams requested to talk about the case, and, after waiving Miranda, he did.[2]
3. On Thursday, his parole officer contacted him to explain his rights relative to a preliminary hearing on his parole violation, as required by La. R.S. 15:574.7 and Morrissey v. Brewer, [408 U.S. 471,] 92 S.Ct. 2593[, 33 L.Ed.2d 484] (1972). Williams requested to talk about the case, and, after waiving Miranda, he did.
4. Later on Thursday afternoon, pursuant to defendant's written request, Sheriff Jones came to see him. Williams requested to talk about the case, and, after waiving Miranda, he did.
In other words, his first three inculpatory statements had all been made within 42 hours of the moment of his arrest for the parole violation, and less than 25 hours after his arrest for unauthorized use of a motor vehicle, and over two weeks before his arrest for first degree murder and aggravated kidnapping. Importantly, these first three inculpatory statements were voluntarily made to law enforcement officers long before the La. C. Cr. P. art. 230.1 delays had run on any offense.
La. C. Cr. P. art. 230.1 was clearly violated relative to the unauthorized use of a motor vehicle prosecution. La. C. Cr. P. art. 230.1 was probably violated relative to the first degree murder and aggravated kidnapping charges, because of the problematic February 26, 2004, 72-hour hearing that occurred two days after his arrest for these two extremely serious crimes. The only sanction, however, for failing to conduct a timely 72-hour hearing on a particular charge is the state's preclusion from holding the defendant under a bail obligation for that particular offense.
Consider that in State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, the supreme court held that the only remedy for violation of La. C. Cr. P. art. 230.1 is pretrial release. The supreme court rejected Manning's argument that the trial court should have suppressed his subsequent inculpatory videotaped statement based on noncompliance with art. 230.1. Manning, supra.
Further consider the language of La. C. Cr. P. art. 230.1(D): The failure of the sheriff or law enforcement officer to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against defendant.
Moreover, on the second day of his incarceration for his parole violations, defendant admitted all four alleged violations (absconding, use of drugs, hanging with drug dealers, and, most importantly, the unauthorized use of Mrs. Foster's car). *551 Williams agreed in writing to remain in jail until the resolution of all pending felony charges. No matter what happened concerning appointment of a lawyer, the defendant wasn't going anywhere.
The evidence contains no support for the claims by counsel for Williams that the defendant was manipulated by the investigating officers. The only manipulation occurring in this sad and horrific case has been perpetrated by a cowardly, cruel, and violent recidivist named Roy Lee Williams.
The trial court's ruling on the motion to suppress, as well as the conviction and sentence, should have all been affirmed.
With respect, I dissent.

ON REHEARING
Before BROWN, WILLIAMS, GASKINS, DREW and LOLLEY, JJ.
DREW, J., on rehearing.
In the early morning hours of Sunday, February 1, 2004, Roy Lee Williams, a convicted rapist on parole, committed numerous atrocities upon a 73-year-old lady from Coushatta. Among other hideous acts, Williams:
 entered her home without permission;
 kidnapped her, while her invalid husband was in another room;
 stole her Buick Rendezvous;

 anally raped her;
 beat her face until it was unrecognizable;
 strangled her to death; and then
 discarded her naked body beside a dumpster in Natchitoches.
And he now claims that his rights were violated.
Williams pled guilty to first degree murder and received a life sentence, without benefit of parole, probation, or suspension of sentence. He was allowed to make a Crosby plea[1] reserving the right to appeal an unfavorable ruling on his motion to suppress inculpatory statements. On initial appeal, in a 2-1 decision, this court found merit in his motion.
On rehearing, we now reverse that previous opinion and affirm the defendant's conviction and sentence in all respects, agreeing with the learned trial court that all statements at issue are legally admissible. We particularly find that any procedural defects below were harmless error.

CHRONOLOGY OF EVENTS
I. Tuesday, February 3, 2004
After Roy Lee Williams was developed as a suspect, Captain Tracy Scott of the Red River Parish Sheriff's Office secured a copy of an outstanding parole violation warrant,[2] issued in December 2003.
Williams was arrested by Alexandria Police Corporal Carla Whitstine shortly after 9:00 p.m. on February 3, 2004. The officer did not initially read the defendant his Miranda rights, nor did she question him. She merely transported defendant to the Alexandria Police Department.
Travis Trammell, Chief of Criminal Investigations with Natchitoches Parish Sheriff's Office, and Scott met briefly ("five or 10 minutes") with the defendant at 9:25 p.m. on that Tuesday evening. Trammell advised defendant of his Miranda rights both orally and in writing. The officers explained that they were investigating the missing vehicle and the disappearance and murder of the victim. The defendant signed the rights form, indicating *552 that his rights had been explained to him and he understood them. He declined to execute the waiver and declined to be questioned, saying he needed to talk to a lawyer. The investigators immediately stopped the interview, although Williams continued to pepper the officers with questions, seeking to find out what they knew about the case.
Corporal Whitstine then transferred defendant from the Alexandria Police Department to the Rapides Parish Jail, booking him on the parole violation warrant, and again advising Williams of his rights as per Miranda. He signed the form signifying that he understood his rights. Whitstine again did not ask defendant any questions. Later that evening, he was transferred to the Natchitoches Parish Detention Center.
II. Wednesday, February 4, 2004
Judge Lewis Sams signed a warrant for defendant's arrest for unauthorized use of the victim's motor vehicle. At 3:30 p.m. on that date, Red River Parish Sheriff's Detective Johnny Taylor, along with Natchitoches Sheriff Victor Jones, served the felony warrant on Williams at the Detention Center.[3] Taylor told defendant that they were there to serve an arrest warrant on him for unauthorized use of a motor vehicle and proceeded to read defendant his Miranda rights. When presented the Advice of Rights form by the two officers, he signed it twice, once to acknowledge his understanding of his Miranda rights, and a second time to waive these rights and give a statement. Sheriff Jones testified as follows at the motion to suppress hearing:
After we advised (defendant) of his rights, he immediately saidhis first words that he said was, they got me wrong. And at that time I advised him that if he wanted to make a statement or talk to us that we need something in writing requesting to talk to us.
Defendant prepared a handwritten request to speak with Taylor, then admitted his involvement in taking the car about 4:00 a.m. on February 1, but denied that he had killed the lady.[4] The sheriff asked defendant if he would give a written or recorded statement as to what he had just said. Defendant said he probably would, but only with an attorney. The interview immediately ended at that point.
III. Thursday, February 5, 2004
Parole Officer Alvie Myers, as required by law, went to see the defendant at the Detention Center to explain a "Notice of Preliminary Hearing" and to advise defendant of the parole violation charges against him. This visit is a routine and mandatory practice by parole officers, when one of their parolees is arrested on another charge. La. R.S. 15:174.7; Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
Williams was presented with a two-page document with two sections:
 Rights of the Parolee, including the right to counsel; and

*553  The "Bill of Particulars" which listed four reasons for his arrest.[5]
When Myers first entered the room, defendant said he wanted to talk about his "situation." Myers advised him that they needed to first cover the administrative paperwork, and could talk later.
After Myers explained Williams' parole revocation rights, Williams initialed three waivers on the form:
 Waiver of a Preliminary Hearing (and plea of guilty to all four violations);
 Waiver of Final Parole Revocation Hearing (again admitting that he was in violation of his parole); and
 Agreement to Defer Preliminary Hearing (agreeing to remain in jail until the disposition of all pending felony charges, which included the unauthorized use of a motor vehicle).
After the parole officer completed his parole-related duties on that Thursday, Myers asked Williams if he still wanted to talk. When the defendant replied in the affirmative, Myers explained that he needed to advise defendant of his rights and have him sign an Advice of Rights form. Having no Miranda form with him, Myers requested that Captain William Armstrong bring him one. After being read his Miranda rights, Williams signed both sections of the form (Acknowledgment of Rights and Waiver of Rights), all witnessed by Myers and Armstrong. Williams never made a request for counsel in the presence of Myers and Armstrong. His statement was consistent with what he had said to Taylor and Jones the day before.[6]
Defendant then asked Myers if he could speak with Sheriff Jones. After conferring with Sheriff Jones, Myers came back and told defendant that he would need to make a written request before Sheriff Jones would talk with him. Williams did so, and that same day Sheriff Jones met with him. After being Mirandized, he made another statement, again consistent with his February 4 statement. When asked if he would give a written or recorded statement, Williams replied he probably would, but only with a lawyer. The interview was immediately terminated.
IV. Monday, February 9, 2004
This date was the deadline for the state to comply[7] with La. C. Cr. P. art. 230.1, which requires a discussion between a magistrate and a still-incarcerated prisoner about whether the prisoner needs the appointment of counsel. The first three statements had already been made the previous week, at the request of the defendant, with benefit of the advice and waiver of the Miranda warnings.
V. February 13, 2004
Williams, still incarcerated, requested to speak with Michael Wilson, an Assistant Chief Investigator with the Natchitoches Parish Sheriff's Office. Wilson asked that he put it in writing, and Williams did. Several days later, Wilson advised defendant of his Miranda rights, which defendant waived. Williams made yet another statement consistent with all his prior statements (i.e., he admitted going to victim's residence and taking her car, but denied killing her). When defendant said he would like to talk further but wanted to *554 speak with an attorney first, the interrogation immediately ceased.
VI. February 24, 2004
Wilson arrested defendant for first degree murder pursuant to a warrant, and advised defendant of his Miranda rights,[8] which defendant waived, choosing not to give a statement at that time. There was no interrogation.
VII. February 26, 2004
In the record is a 72-Hour Hearing Report which indicates that some type of a "72-hour hearing"[9] was held on this date relative to the first degree murder and aggravated kidnapping charge. Although there was a notation on the Hearing Report stating "appoint attorney," there is no proof in this record that Williams was actually provided counsel until the Capital Assistance Project of Louisiana was appointed on March 10, 2004.[10]
VIII. March 22 and 23, 2004
Paula Allen (the mother of defendant's child) told Taylor that she had recently visited with defendant, who again wanted to speak with Taylor. The detective insisted that defendant make a written request for him to do so, which was in fact received the following day.
Taylor met with defendant the following afternoon, first advising defendant of his Miranda rights, which defendant agreed to waive. After a few generalities, Taylor asked defendant if he had spoken with an attorney. Defendant said he had met with several of them. They discussed the death penalty. At one point, Williams said "God had forgave him." When Taylor asked him what happened after he left in the car, he did not answer.
IX. Chronology of Subsequent Events
 05/19/04 The defendant, with counsel, pled not guilty.
 10/25/04 The defendant, through counsel, filed a motion to suppress his inculpatory statements.
 04/08/05 Evidence was received[11] on the motion, and the matter taken under advisement.
 07/19/05 The trial court denied defendant's motion, ruling that defendant was properly advised of and waived his Miranda rights before each challenged statement, and noting that each conference came at the express initiation *555 of the defendant. The court declined to suppress any of the five statements.
 11/30/06 Williams entered a Crosby plea of guilty to first degree murder on the conditions noted above.

REASONING
The defendant correctly argues that:
 after he was served with the unauthorized use of a motor vehicle arrest warrant on February 4, 2004, no timely 72-hour hearing was held for that crime, as required by La. C. Cr. P. art. 230.1; and
 there is no notation on the February 26, 2004, "72-Hour Hearing Report Form" that clearly shows that he was actually brought before a judge on that date, nor that he was appointed an attorney.
The defendant then speculates that:
 had he been released on February 9, 2004, as was his remedy under La. C. Cr. P. art. 230.1, he would not have made certain subsequent custodial statements;
 if he had been appointed a lawyer sooner, he may not have talked; and
 he was greatly prejudiced by the lack of a timely 72-hour hearing.
In response, the State asserts that:
 admittedly, nothing in the record indicates that the defendant was given a 72-hour hearing relative to his arrest for unauthorized use of a motor vehicle;
 the defendant was also being held on a forcible rape parole violation warrant, for which defendant admitted all allegations, deferred a parole preliminary hearing, and agreed to remain in jail until the disposition of all felony charges;

 because of the parole hold, he would not have been released anyway; and
 concerning the first degree murder and aggravated kidnapping charges, defendant was timely brought before a judge on February 26, 2004, for a 72-hour hearing only two days after his arrest for these crimes, though it is disputed as to exactly who was present and what occurred on that day.
La. C. Cr. P. art. 230.1 provides:
A. The sheriff or law enforcement officer having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two hour period referred to herein. The defendant shall appear in person unless the court by local rule provides for such appearance by telephone or audio-video electronic equipment. However, upon a showing that the defendant is incapacitated, unconscious, or otherwise physically or mentally unable to appear in court within seventy-two hours, then the defendant's presence is waived by law, and a judge shall appoint counsel to represent the defendant within seventy-two hours from the time of arrest.
B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.
C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
D. The failure of the sheriff or law enforcement officer to comply with the requirements herein shall have no *556 effect whatsoever upon the validity of the proceedings thereafter against defendant.
Our emphasis added.
In State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044, the supreme court held that the only remedy for violation of La. C. Cr. P. art. 230.1 is pretrial release. The supreme court rejected Manning's argument that the trial court should have suppressed his subsequent inculpatory videotaped statement based on noncompliance with La. C. Cr. P. art. 230.1 because of this exclusive remedy.
While Williams did not have a timely 72-hour hearing on the unauthorized use of a motor vehicle charge, his only remedy for that oversight was pretrial release on that charge. La. C. Cr. P. art. 230.1. However, because of the parole hold and his agreement to remain in jail, he wasn't going anywhere.
Two days after his arrest for first degree murder, a hearing was held. It is unclear as to exactly what happened on February 26, 2004. What is clear, however, is that Williams had made three voluntary inculpatory statements within 42 hours of his arrest on the parole warrant, and within 25 hours of his arrest on the unauthorized use of a motor vehicle warrant. Each statement was initiated by the defendant, and only made after he had duly waived his Miranda rights.[12]
Regarding requests for counsel, our supreme court stated in State v. Hobley, 98-2460 (La.12/15/99), 752 So.2d 771, 788, U.S. cert. denied:
[O]nce a suspect in custody expresses a desire, at any stage in the process, to deal with the police only through counsel, all questioning must cease, and the accused may not be subject to further interrogation until counsel has been made available to him, unless he initiates further communication, exchanges or conversation with the police and validly waives his earlier request for counsel. (Emphasis added). Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); Miranda, 384 U.S. at 444-45, 86 S.Ct. at 1612.

Miranda and Edwards are prophylactic rules designed to protect an accused against the inherently compelling pressures of custodial interrogation, whether by police badgering, overreaching or subtle but repeated efforts to wear down an accused's resistance and make him change his mind. Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983).
Minnick v. Mississippi, 498 U.S. 146, 153, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990), reaffirmed Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), stating that "when counsel is requested, interrogation must cease; and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." Minnick reconfirms that the defendant may reinitiate an interrogation, which is exactly what happened here.
Louisiana adheres to these same principles. When an accused invokes his right to counsel, the admissibility of a subsequent confession or incriminating statement is determined by a two-step inquiry:
(1) Did the accused initiate further conversation or communication; and
(2) Was the purported waiver of counsel knowing and intelligent under the totality of the circumstances.
State v. Abadie, 612 So.2d 1 (La.1993).
Here, the answer to these two questions is a resounding affirmative. No evidence *557 contradicts this conclusion. Williams produced nothing at the hearing on his motion to dispute the law officers' account of exactly what transpired, warts and all. The conduct of the peace officers here, pertaining to these statements, was not just legally acceptable, it was exemplary.
There is a Fifth Amendment right to counsel, which pertains to statements given during custodial interrogation (the privilege against compulsory self-incrimination), and a broader Sixth Amendment right to counsel, focused on assisting a defendant through the complicated maze of proceedings involved in a criminal prosecution, which can include interrogation. These rights are intertwined here. Under these facts, neither amendment, nor any related jurisprudence, requires suppression here.
A defendant has a Sixth Amendment right to counsel only after adversary criminal proceedings have been initiated against him, and then, only at specific, critical stages of the proceedings. See State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367.
"The [Sixth Amendment] right to counsel does not attach prior to the initiation of adversary criminal proceedings whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).
In State v. Taylor, 01-1638 (La.1/14/03), 838 So.2d 729, 739, U.S. cert. denied, our supreme court stated that police are not prohibited from reinitiating contact with defendant:
When a defendant exercises his privilege against self-incrimination the validity of any subsequent waiver depends upon whether police have "scrupulously honored" his right to remain silent. Whether police have "scrupulously honored" an accused's right to silence is determined on a case-by-case basis under the totality of the circumstances.
Factors going into the assessment include who initiates further questioning, although, significantly, police are not barred from reinitiating contact, (invocation of right to counsel during custodial interrogation has greater protection than invocation of right to remain silent, as police may not thereafter question defendant unless he initiates further contact); whether there has been a substantial time delay between the original request and subsequent interrogation; whether Miranda warnings are given before subsequent questioning; whether signed Miranda waivers are obtained; and, whether the later interrogation is directed at a crime that had not been the subject of the earlier questioning.
Citations omitted. Our emphasis added.
Defendant's statutory right to appointment of counsel for unauthorized use of a motor vehicle pursuant to La. C. Cr. P. art. 230.1 was required not later than Monday, February 9, 2004.[13] It never happened, meaning that he could not be held under a bail obligation for that charge.
Law enforcement attempted to comply with defendant's statutory right to his 72-hour hearing and presumptive appointment of counsel for first degree murder and aggravated kidnapping, pursuant to La. C. Cr. P. art. 230.1. The officers arranged an initial presentment/72-hour *558 hearing on February 26, 2004, but apparently mistakes were made. Even though the criminal justice system did not function very well on February 26, 2004, this breakdown is certainly not imputable to the law officers involved.
Although defendant can generally waive his Sixth Amendment right to counsel at direct or overt interrogation conducted after his rights have attached, in those cases in which defendant has affirmatively asserted the right to counsel, a later waiver in response to police-initiated interrogation is irrebuttably presumed invalid. State v. Carter, supra. In this matter, the police never reinitiated any questioning; only Roy Lee Williams did.
Starting February 5, 2004, less than two full days after his arrest on the parole violation, and less than one full day after his arrest for unauthorized use of a motor vehicle, defendant admitted that he had violated his parole (including unauthorized use of the victim's Buick) and agreed to remain in jail until the resolution of all felony charges. There was no possibility of his being released from custody, regardless of any subsequent violation of La. C. Cr. P. art. 230.1, on either the unauthorized use of a motor vehicle charge, the first degree murder charge, or the aggravated kidnapping charge.
There was another huge impediment to the defendant's being released from custody. First degree murder is a capital offense. La. R.S. 14:30. One charged with a capital offense is expressly precluded from admission to bail except under strict guidelines. See La. C. Cr. P. art. 331. No application for release on bail for this defendant was ever made.
Nothing in the Fifth or Sixth Amendment precludes a suspect, on his own initiative, and even when charged with a crime and represented by counsel, from choosing to speak with police in the absence of an attorney.
The Carter case adopts a passage from Adams v. United States ex rel. McCann, 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942):
Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will. To hold that a defendant is inherently incapable of relinquishing his right to counsel once it is invoked would be "to imprison a man in his privileges and call it the Constitution."
The officers investigating Roy Lee Williams for this horrific crime scrupulously protected the defendant's rights in all interrogations.
Williams never quit trying to communicate with and finesse law enforcement. Consider these later requests to talk (all ignored) made by the defendant, long after he had multiple lawyers:
 3/26/04 Inmate Request Form (to see Sheriff Jones);
 4/15/04 short note mailed to Sheriff Jones;
 6/1/04 letter mailed to V. Jones on 6/1/04 (Request to talk with Sheriff Jones), with a salutation of "Victor;"
 7/10/04 letter to Sheriff J.R. Norman, requesting that the sheriff "come & sit and talk" with him; and
 10/10/04 letter to Detective Taylor, with a salutation of "J.T."

CONCLUSION
This record overwhelmingly supports the trial court's conclusions on the credibility and weight of the testimony relating to the knowing, intelligent, free, and voluntary nature of all of defendant's statements. *559 In making these statements, Williams knew precisely what he was doing. His motion to suppress was properly denied.

DECREE
We affirm the defendant's conviction and mandatory sentence.
AFFIRMED.
WILLIAMS, J., dissents adhering to the view expressed in the original opinion.
LOLLEY, J., dissents for the reasons assigned by Williams, J.
NOTES
[1] At the suppression hearing, Williams did not avail himself of the benefits conferred in La. C. Cr. P. art. 703(E)(1).
[2] Consider this recent holding by the Supreme Court of Florida in a similar case to this one: "Service of an arrest warrant is a routine police procedure. It does not require any response from a suspect; nor can it be reasonably expected to elicit an incriminating response. Thus, this action does not constitute interrogation, and we affirm the trial court's denial of the motion to suppress on this claim." Everett v. Florida, 893 So.2d 1278 (Fla.2004), U.S. cert. denied.
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] Williams was out on parole for a previous crime of forcible rape.
[3] Consider this recent holding by the Supreme Court of Florida in a case similar to this one: "Service of an arrest warrant is a routine police procedure. It does not require any response from a suspect; nor can it be reasonably expected to elicit an incriminating response. Thus, this action does not constitute interrogation, and we affirm the trial court's denial of the motion to suppress on this claim." Everett v. Florida, 893 So.2d 1278 (Fla.2004), U.S. cert. denied.
[4] This same general information is contained in each of his statements.
[5] Changing residence without permission; Positive drug screen; Consorting with drug dealers; and Unauthorized use of a motor vehicle.
[6] Williams never denied taking the vehicle, but asserted that he never hurt the lady.
[7] Relative to the defendant's arrest for unauthorized use of a motor vehicle.
[8] The Miranda warnings are required at any arrest in Louisiana, whether or not the officers intend to question the arrestee. La. C. Cr. P. art. 218.1.
[9] This hearing is referred to by different terms in various areas of this state: "72-Hour Hearing," "Initial Presentment," and "Jail Clearance."
[10] Counsel was appointed 36 days after his arrest (2/3/04) on the parole violation; 35 days after his arrest (2/4/04) for unauthorized use of a motor vehicle; 15 days after his arrest (2/24/04) for first degree murder and aggravated kidnapping; 13 days after the confusing 72-hour hearing (2/26/04); after his first four statements, but 12 days before his fifth statement; and 33 days before his indictments for first degree murder and aggravated kidnapping (4/12/04).
[11] The witnesses who testified on the motion to suppress, either in court or by stipulation, were Red River Parish Sheriff's Office Chief Deputy Tracy Scott, Natchitoches Parish Sheriff's Office Chief Investigator Travis Trammell, Alexandria Police Dept. Corporal Carla Whitstine, Red River Parish Sheriff's Office Detective Johnny Taylor, La. Parole Agent Alvie Myers, Natchitoches Parish Sheriff Victor Jones, Natchitoches Police Dept. Sgt. Julius Armstrong, Natchitoches Parish Sheriff's Office Chief Investigator Michael Wilson and Red River Parish Sheriff Johnny Ray Norman. Despite the protection afforded by La. C. Cr. P. art. 703(E)(1), the defendant neither testified nor called any witnesses.
[12] Four of the five requests to make a statement were in writing.
[13] Legal holidays are not figured in the computation of time delays under La. C. Cr. P. art. 230.1.