GASKINS, J.
 

 liThe defendant, Decameo Marquis Reynolds, entered a plea of guilty to two counts of second degree murder, reserving his right under
 
 State v. CrosbY,
 
 338 So.2d 584 (La.1976), to appeal the trial court’s denial of his motion to suppress a confession made to law enforcement officers. The defendant was sentenced to serve two concurrent life sentences without benefit of parole, probation, or suspension of sentence. On appeal, the defendant argues that statements made to law enforcement officers were elicited after he invoked his right to remain silent and his right to counsel. For the following reasons, we affirm the convictions and sentences.
 

 FACTS
 

 In the early morning hours of June 7, 2007, the defendant went to a mobile home in Lincoln Parish to buy “some cigars and some weed.” The occupants of the dwelling, Willie Perry and Sharon Ann Newman, told the defendant to leave. The defendant and Perry got into a scuffle and Newman came outside with a pistol. The defendant went to a nearby car. Perry and Newman went back into the residence and went to bed. The defendant armed himself with a .32 caliber gun, entered the residence, and shot both Perry and Newman in the head while they were in bed. The victims died of their wounds.
 

 The defendant was developed as a suspect in the killings. The next day, law enforcement officers located the defendant at his father’s house in Jackson Parish. The defendant was told that the officers wanted to question him about the murders. The defendant was not placed under arrest at that 1 ¡.point and went willingly with the law enforcement officers who transported him back to Lincoln Parish.
 

 At the courthouse, the defendant’s handcuffs were removed and he was placed in a room that was used for interviews and for file storage. The defendant was given his
 
 Miranda
 
 warnings several times. He eventually waived his rights and gave a statement admitting the murders. He was charged by grand jury indictment with two counts of first degree murder. The defendant filed a motion to suppress his statements, claiming they were not voluntarily given and were obtained through continued interrogation after the defendant asserted his right to remain silent and his right to counsel.
 

 A hearing on the motion to suppress was held on September 11, 2009. In an oral ruling on January 7, 2010, the trial court denied the motion to suppress. On January 12, 2010, the defendant entered a plea of guilty to the amended charge of two counts of second degree murder, reserving his right to appeal the trial court’s ruling on the motion to suppress under
 
 State v.
 
 
 *139
 

 Crosby, supra.
 
 The defendant was sentenced to serve two concurrent sentences of life imprisonment without benefits. The defendant appealed the denial of his motion to suppress.
 

 MOTION TO SUPPRESS
 

 On appeal, the defendant argues that the trial court erred in denying his motion to suppress statements made to law enforcement officers after he stated that he did not want to talk to them and invoked his rights as |senumerated in the waiver form provided by law enforcement officers. This argument is without merit.
 

 Legal Principles
 

 Before a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D);
 
 State v. Bowers,
 
 39,970 (La.App.2d Cir.8/19/05), 909 So.2d 1038;
 
 State v. Rod-dy,
 
 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272,
 
 writ denied,
 
 2000-1427 (La.5/11/01), 791 So.2d 1288. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his
 
 Miranda
 
 rights.
 
 State v. Bowers, supra; State v. Franklin,
 
 35,268 (La.App.2d Cir.12/19/01), 803 So.2d 1057,
 
 writ denied,
 
 2002-0352 (La.2/7/03), 836 So.2d 85;
 
 State v. Roddy, supra.
 

 At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession.
 
 State v. Hills,
 
 354 So.2d 186 (La.1977);
 
 State v. Roddy, supra.
 
 See La. C. Cr. P. art. 703.
 

 Although promises or inducements will void a defendant’s confession, a mild exhortation to tell the truth, or an indication that if the defendant cooperates the officer will “do what he can” or “things will go easier,” will not negate the voluntary nature of a confession.
 
 State v. Thomas,
 
 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808,
 
 writ denied,
 
 1999-0331 (La.7/2/99), 747 So.2d 8. Appeals to a defendant’s emotions |4and/or religious beliefs typically do not render an ensuing confession involuntary.
 
 State v. Blank,
 
 2004-0204 (La.4/11/07), 955 So.2d 90,
 
 cert. denied,
 
 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007). See also
 
 State v. Murray,
 
 546 So.2d 944 (La.App. 3d Cir. 1989);
 
 State v. Welch,
 
 448 So.2d 705 (La.App. 1st Cir.1984),
 
 writ denied,
 
 450 So.2d 952 (La.1984).
 

 The exercise of the right to silence by an accused does not act as a complete bar to all further questioning. However, the police must “scrupulously honor” the right to cut off questioning by the person in custody.
 
 Michigan v. Mosley,
 
 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975);
 
 State v. Loyd,
 
 425 So.2d 710 (La.1982). The question of whether an accused’s rights are “scrupulously honored” is a factual issue which depends upon the totality of the circumstances involved under the particular facts of each case.
 
 State v. Brooks,
 
 505 So.2d 714 (La.1987), ce
 
 rt. denied,
 
 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). The factors to be considered are who initiates the further questioning; the time delay between the original request and subsequent interroga^ tion; whether
 
 Miranda
 
 warnings were given before each separate interrogation; whether waiver of rights forms were signed; and whether pressures were asserted on the accused by police between the time he invoked his rights and the subsequent interrogation.
 
 State v. Brooks,
 
 
 *140
 

 supra; State v. Hamilton,
 
 94-696 (La.App. 5th Cir.12/14/94), 648 So.2d 939.
 

 Invocation of the right to counsel during custodial interrogation has greater protection than the invocation of the right to remain silent, as police 15may not thereafter question the defendant unless he initiates further contact. See
 
 State v. Taylor,
 
 2001-1638 (La.1/14/03), 838 So.2d 729,
 
 cert. denied,
 
 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004). When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. See
 
 Edwards v. Arizona,
 
 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). When an accused invokes his
 
 Miranda
 
 right to counsel, the admissibility of a subsequent confession or incriminating statement is determined by a two-step inquiry: (1) did the accused initiate further conversation or communication; and (2) was the purported waiver of counsel knowing and intelligent under the totality of the circumstances.
 
 State v. Koon,
 
 96-1208 (La.5/20/97), 704 So.2d 756,
 
 cert. denied,
 
 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997);
 
 State v. Abadie,
 
 612 So.2d 1 (La.1993),
 
 cert. denied,
 
 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993);
 
 State v. Williams,
 
 42,312 (La.App.2d Cir.8/15/07), 965 So.2d 541,
 
 writ denied,
 
 2007-2158 (La.4/18/08), 978 So.2d 347.
 

 In proving an intelligent waiver of the rights to silence, protection against self-incrimination and counsel, the state need not show that a | (¡defendant was aware of the full evidentiary significance of his statements. See
 
 State v. Mitchell,
 
 421 So.2d 851 (La.1982).
 

 The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court’s conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence.
 
 State v. Thibodeaux,
 
 1998-1673 (La.9/8/99), 750 So.2d 916,
 
 cert. denied,
 
 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000);
 
 State v. Brown,
 
 2003-0897 (La.4/12/05), 907 So.2d 1,
 
 cert. denied,
 
 547 U.S. 1022, 126 S.Ct. 1569, 164 L.Ed.2d 305 (2006);
 
 State v. Dailey,
 
 607 So.2d 904 (La.App. 2d Cir.1992). Great weight is placed upon the trial court’s factual determinations because of its opportunity to observe witnesses and assess credibility.
 
 State v. Roddy, supra.
 
 Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily.
 
 State v. Bowers, supra; State v. Allen,
 
 40,972 (La.App.2d Cir.5/17/06), 930 So.2d 1122,
 
 writ denied,
 
 2008-0507 (La.11/26/08), 997 So.2d 543. In reviewing the correctness of the trial court’s pretrial ruling on a motion to suppress, the appellate court may review the entire record.
 
 State v. Young,
 
 39,546 (La.App.2d Cir.3/2/05), 895 So.2d 753;
 
 State v. Sherman,
 
 2004-1019 (La.10/29/04), 886 So.2d 1116.
 

 Discussion
 

 At the hearing on the motion to suppress, the officers who were present during the questioning of the defendant testified. George Webb, an 17investigator with the Lincoln Parish Sheriffs Office, stated that the interview of the defendant began at 4:10 p.m. on June 8, 2007. The defendant was advised of his
 
 Miranda
 
 rights.
 
 *141
 
 The defendant was 22 years old and had completed three semesters of college. The defendant signed the rights form and agreed to answer questions without a lawyer being present.
 

 According to Webb, Kenneth Wesley of the Lincoln Parish Sheriffs Office did the majority of the questioning of the defendant. Webb testified that the defendant was not forced, threatened, coerced or intimidated. No promises were made to the defendant. The initial part of the interview was not recorded. The defendant made no inculpatory statements at that time. For some reason, the defendant was uncomfortable with Webb being in the room. As Webb left the room, he turned on his voice recorder and placed it on top of a file cabinet in the room. Webb then stood outside the room.
 

 A transcript of the conversation between Wesley and the defendant shows that the defendant initially denied involvement in the murders. Wesley asked the defendant whether he would rather face the electric chair or spend life in prison. The defendant said he would rather go to the electric chair. Wesley mentioned suspicions that the defendant was involved in another offense involving the rape and murder of a child. Wesley told the defendant that he would not make it out of Angola. The defendant stated, “I am through talking.” The interview was terminated.
 

 Wesley told Webb that he and Stephen Williams, also of the Lincoln Parish Sheriffs Office, could go back into the room and talk to the defendant. The defendant stated to Webb and Williams that he had been |8informed of his
 
 Miranda
 
 rights, that he understood them, and “I’m gonna take em.” The interview was concluded.
 

 While talking with the officers, the defendant asked to see his mother. Williams stayed in the unsecured file room with the defendant while Webb and Wesley went to get the defendant’s mother. While they were in the room together, the defendant initiated a conversation with Williams and asked him what he thought. Williams, who knew that the defendant had told his father that he committed the murders, told the defendant that he had put his father in a bad position because the defendant’s father might have to testify against him. The defendant asked for Wesley and said that he wanted to tell Wesley what happened.
 

 Webb and Wesley were about two blocks from the courthouse when they were contacted and returned to the courthouse. Webb and Wesley went back into the room with the defendant. The defendant was again administered his
 
 Miranda
 
 rights and signed a form stating that he understood his rights and waived them. The defendant gave a statement confessing to the murders.
 

 At the hearing on the motion to suppress, Wesley acknowledged that he had prayer with the defendant before the interviews. Wesley testified that he did not think his statements to the defendant regarding the electric chair, not making it out of Angola, and possibly being involved in another offense involving a child were threatening or intimidating.
 

 |9In denying the motion to suppress, the trial court made this finding:
 

 In the case at hand, the evidence is uncontradicted that after the defendant invoked his rights, the first interview ceased and the recorder was turned off. Webb and Wesley, at Reynold’s [sic] request, went to get his mother to bring her to Reynolds. At that point, Reynolds initiated a conversation with Williams and then he decided that he wanted to give a statement and he so told Williams. Webb and Wesley were notified and returned to the interview
 
 *142
 
 room where Reynolds was again Miran-dized and at that time gave a free and voluntary confession detailing his involvement in this particular crime. Accordingly, for the reasons hereinabove stated, the motion to suppress will be DENIED.
 

 The trial court did not err in making this finding. At the hearing on the motion to suppress, the state established that the defendant was brought in for questioning regarding the murder investigation. He was advised as to why he was there and was properly advised of his
 
 Miranda
 
 rights. The defendant understood those rights and signed a waiver of rights form before talking to officers.
 

 The record shows that the defendant voluntarily waived his rights and agreed to talk to the officers. When he later chose to exercise his rights, the officers scrupulously honored the defendant’s choice and ceased questioning. The fact that one of the officers remained in the room with the defendant while the others went to get the defendant’s mother was necessitated by security reasons. The record shows that it was the defendant who reinitiated contact with the officers. The defendant asked Williams what he thought. The defendant then asked for Wesley because he wanted to tell him what happened. He was again informed of his rights under
 
 Miranda
 
 and chose to waive those rights and confess to the murders. There is no showing that any statements made to the defendant during questioning were threatening, 1 incoercive, or intimidating. No promises were made to the defendant. This record shows that the confession made by the defendant was free and voluntary. Accordingly, we affirm the trial court decision to deny the defendant’s motion to suppress his statements.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the convictions and sentences of the defendant, Deeameo Marquis Reynolds.
 

 AFFIRMED.